No.   92-517

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

STATE OF MONTANA,

        Plaintiff and Respondent,

    -v-

ROSIE DENNY,

        Defendant and Appellant.

FILED

DEC 0 6 1993

CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Twelfth Judicial District,
               In and for the County of Hill,
               The Honorable John Warner, Judge presiding.


COUNSEL OF RECORD:

        For Appellant:

            William Hooks, Office of the Appellate Defender,
            Helena, Montana

        For Respondent:

            Hon. Joseph P. Mazurek, Attorney General, Jennifer
            Anders, Assistant Attorney General, Helena, Montana;
            David G. Rice, Hill County Attorney, Havre, Montana


                        Submitted on Briefs:   September 2, 1993

                                    Decided:   December 6, 1993

Filed:


                        Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal from a Twelfth Judicial District Court, Hill County, judgment on a motion for a new trial, which was filed after a jury found Rosie Denny guilty of conspiracy to sell dangerous drugs. We affirm.

We restate the issues on appeal:

1. Was Ms. Denny denied effective assistance of counsel?

2. Did the District Court abuse its discretion in denying Denny's motion for a new trial upon the grounds of ineffective assistance of counsel?

On November 14, 1991, Patrolman George Tate and Blaine County Deputy Sheriff William Brewer (Brewer) traveled to Medicine Hat, Alberta, Canada, to meet with Ramona Daychild (Daychild). Both officers worked as undercover officers for the Tri-Agency Drug Task Force. Their purpose in meeting Daychild was to arrange for the purchase of cocaine. The two traveled with Daychild to Havre to meet with Lester Azure (Azure) who was supposed to make a "connection" with a drug supplier for the purchase. When they went to Havre, Brewer and Daychild met with Azure at the Corner Bar. The two returned to the Duck Inn, where the officers were staying, returned Daychild to the tavern and then went to the Tri-Agency Task Force office to prepare for the purchase of the drugs. At that time, Brewer was fitted with a "body wire," which concealed a transmitter attached to his person, which monitored conversations he had with suspects.

When Daychild and Brewer first met with Azure, they were told

that Azure's connection did not get off work until 4:30. At 5:00 that evening, Brewer and Daychild were joined by Azure and Terry Ceynar (Ceynar) at the Buttrey's store. Brewer was told that Ceynar was going to find his connection so that Brewer could purchase cocaine. The group then left Buttrey's and went to the Atrium Mall, with Ceynar as a passenger in Brewer's car.

Ceynar departed the car and went into the Atrium Mall. He emerged a few minutes later with a woman and they then proceeded to her car. The woman with Ceynar was Rosie Denny (Denny), whom Brewer recognized and Ceynar later referred to as "Rosie...the gal I got it from." Ceynar was in Denny's car for a few moments, then returned to Brewer's car, and told Brewer that his connection had eight or nine grams of cocaine. Brewer gave him $800 and Ceynar returned to Denny's car. A few minutes later, Ceynar returned to Brewer's car again, this time handing Brewer a small plastic bag containing a number of small square bindles. They then left the parking lot and drove toward Ceynar's house.

Brewer testified that as soon as he dropped Ceynar off, he met with the other undercover police officers who were working on the case and had been surveiling him. Brewer gave Officer Reichelt the plastic bag with the bindles, which Reichelt promptly marked as evidence. Officer Reichelt sent the bindles and plastic bag to the State Crime Lab but no fingerprints matched Denny's or Ceynar's fingerprints. An information was filed on March 9, 1992 and a warrant of arrest was served on March 30, 1992. Denny's case came to trial on July 23, 1992 and a jury found her guilty on July 24,

3

1992.

We review a denial of a motion for a new trial under § 46-16-702, MCA, which states that "[f]ollowing a verdict or finding of guilty, the court may grant the defendant a new trial if required in the interest of justice." "The granting and denying of a new trial rests within the sound discretion of the district court and this Court will not overturn that decision unless the district court abuses its discretion." State v. Haskins (1992), 255 Mont. 202, 210-211, 841 P.2d 542, 547. (Citation omitted.)

Denny argues that her trial counsel was ineffective because he failed to investigate and interview witnesses in her case. Strickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, provides the two-part test for determining whether counsel was ineffective:

> First, the defendant must show that counsel's performance was deficient. This requires showing that counsel made errors so serious that counsel was not functioning as the "counsel" guaranteed the defendant by the Sixth Amendment. Second, the defendant must show that the deficient performance prejudiced the defense. This requires showing that counsel's errors were so serious as to deprive the defendant of a fair trial, a trial whose result is reliable. Unless a defendant makes both showings, it cannot be said that the conviction or death sentence resulted from a breakdown in the adversary process that renders the result unreliable.

Strickland, 466 U.S. at 687. See also; State v. Hurlbert (1988), 232 Mont. 115, 756 P.2d 1110; State v. Coates (1990), 241 Mont. 331, 786 P.2d 1182.

The first prong of the Strickland test considers whether counsel's performance was deficient. "The proper measure of attorney performance remains simply reasonableness under prevailing

4

professional norms." Lawrence v. Armontrout (8th Cir. 1990), 900 F.2d 127, 129. (Citation omitted.)

In the instant case, Denny's counsel used a defense of innocence. Her position was that she was at the Atrium Mall for one purpose only - to purchase a washing machine. Thus, the critical issue in the case was her credibility. Counsel thought that Denny would not make a good witness and that "[s]he would have needed help" yet he did not interview possible witnesses who could have supported her testimony. Denny's brother met her at the Atrium Mall to help her load the washing machine. There were also two adolescents who helped her brother move the washing machine. The employee who sold the washing machine to her was another possible witness as well as her employer who paid her on that day so she could purchase the washing machine. Denny's counsel said he never thought of calling the employer but he did think of calling the brother, the two young people with him and the man who sold her the washing machine. Trial counsel testified that he had the impression Denny did not want her brother to testify because her brother did not wish to be involved. He thought the testimony of the salesperson at the Third-Hand Store would be irrelevant.

It is difficult to determine whether the salesperson or any of the other potential witnesses would testify as to irrelevant matters when they were not even interviewed. It is not difficult, however, to determine whether counsel should have at least interviewed the witnesses before rejecting the possibility of using their testimony at trial.

We adopt the reasoning of the Fifth Circuit in this regard.

> To determine the reasonableness of [counsel's] conduct in this situation, we must take into account two different, and potentially antithetical, considerations. First is the "strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Because of the danger of over-zealous post-trial inquiry into an attorney's decisions made during the litigation, "a particular decision not to investigate must be directly assessed for reasonableness in all the circumstances, applying a heavy measure of deference to counsel's judgments."
>
> A substantial body of Fifth Circuit case law insists, however, "that 'effective counsel conduct a reasonable amount of pretrial investigation.'" Although the scope of the required investigation is a function of the "number of issues in the case, the relative complexity of those issues, the strength of the government's case and the overall strategy of trial counsel," this circuit has recognized that, <u>at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case.</u> This duty is reflected in the American Bar Association Standards for Criminal Justice, a proper guide for determining what is reasonable under the circumstances. These specific obligations inherent in counsel's duty to investigate must temper the amount of deference we give [counsel's] on-the-spot actions in evaluating his performance. (Emphasis added.)

Nealy v. Cabana (5th Cir. 1985), 764 F.2d 1173, 1177-1178.

The opinion that counsel, in providing effective assistance of counsel, must at least interview potential witnesses, is echoed in other circuit courts. For example, the D.C. Circuit has stated:

> Counsel's failure to interview the proposed witnesses is troublesome. Had trial counsel interviewed the witnesses, his decision not to call them might be protected from an ineffective assistance claim as a tactical litigation decision. <u>The complete failure to investigate potentially corroborating witnesses, however, can hardly be considered a tactical decision.</u> As the Supreme Court noted in Strickland, "[C]ounsel has a duty to make reasonable investigation or to make a reasonable decision that makes particular investigations unnecessary." 104 S. Ct. at 2066. (Emphasis added.)

United States v. Debango (D.C. Cir. 1986), 780 F.2d 81, 85.

6

It is apparent that counsel in the instant action should have interviewed the potential witnesses to at least determine what they had to report. They might possibly have seen or overheard something which was relevant to the case. Their testimony may have supported Denny's defense. Trial counsel had a duty to investigate and interview witnesses who may have possessed knowledge about Denny's innocence. Lawrence, 900 F.2d at 130. By not interviewing the potential witnesses and investigating the case, "counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 U.S. at 687. We conclude that Denny has successfully satisfied the first prong of the Strickland test.

As stated above, the Strickland test is a two-prong test; both prongs must be satisfied in order to successfully establish ineffective assistance of counsel. The second prong of the Strickland test is established if Denny can demonstrate that counsel's deficient performance so prejudiced her as to deprive her of a fair trial. Strickland, 466 U.S. at 687. Because counsel did not investigate and interview the potential witnesses, it is impossible to tell whether this omission prejudiced the defendant to such a degree as to deprive her of a fair trial. U.S. ex rel. McCall v. O'Grady (7th Cir. 1990), 908 F.2d 170, 173. Since we do not know what the potential witnesses would have testified, we also cannot determine whether such testimony would possibly have produced a different result. McCall, 908 F.2d at 173.

The Seventh and Eighth Circuits, faced with similar situations

7

in post conviction proceedings, have required that the defendant be afforded an evidentiary hearing at which time the defendant can make "a comprehensive showing as to what the investigation would have produced." U.S. ex rel. Cross v. DeRobertis (7th Cir. 1987), 811 F.2d 1008, 1016.

We adopt the following test and procedure enunciated by the Seventh Circuit:

> The focus of the inquiry must be on <u>what information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result.</u> Under usual circumstances, we would expect that such information would be presented to the habeas court through the testimony of the potential witnesses. "Complaints of uncalled witnesses are not favored in federal habeas review." Therefore, <u>if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial</u>. The district court simply cannot fulfill its obligation under <u>Strickland</u> to assess prejudice until the petitioner has met his burden of supplying sufficiently precise information. (Citations omitted.) (Emphasis added.)

<u>Cross</u>, 811 F.2d at 1016. In the instant case, Denny had a hearing on her motion for new trial. However, a different counsel appointed to represent her at that proceeding did not call any of the potential witnesses either. In this regard, Denny contends that the latter counsel was also ineffective because he too, failed to secure the testimony of the potential witnesses for her hearing on the motion for a new trial. As stated above, without these witnesses or an opportunity for the defendant to explain "with some precision, the content of the testimony they would have given at trial," Denny could not have met her burden of satisfying the

8

second prong of the Strickland test. Cross, 811 F.2d at 1016. Under similar circumstances, the Eighth Circuit Court stated:

> A petitioner seeking relief based on ineffective assistance of counsel must "affirmatively prove prejudice." To affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial. Moreover, if potential trial witnesses are not called to testify at a post-conviction review hearing, the petitioner ordinarily should explain their absence and "demonstrate, with some precision, the content of the testimony they would have given at trial." In view of these requirements, we believe that [petitioner's] postconviction counsel also failed to exercise the skill and diligence expected of a reasonably competent attorney under similar circumstances. (Citations omitted.)

Lawrence, 900 F.2d at 130. We conclude also that Denny's counsel at the hearing on her motion for new trial should have presented the testimony of the potential witnesses or at least presented sufficient precise information about their prospective testimony so as to allow the District Court to assess prejudice by determining what "information would have been obtained from such an investigation and whether such information, assuming its admissibility in court, would have produced a different result." Cross, 811 F.2d at 1016.

We conclude that the failure of Denny's second counsel to present the testimony of Denny's potential witnesses further frustrated her attempt to satisfy the second prong of the Strickland test.

Having discussed the law applicable to the ineffective assistance of counsel claims at issue in this case, it remains incumbent upon this Court to, nevertheless, dispose of the case

9

based upon the procedural posture in which it comes to us on appeal.

Denny has raised her claims of ineffective assistance of counsel on appeal from the District Court's denial of her motion for a new trial. Based upon the lack of evidence presented to the District Court at the hearing on Denny's motion, the Court had little option but to deny the motion. By reason of the failure of her second counsel, Denny simply did not present any evidence from which the District Court could have assessed prejudice by determining what information would have been obtained had trial counsel interviewed potential witnesses and whether such information, assuming its admissibility in court, would have produced a different result. Denny, thus, failed in her burden to prove prejudice, as required under Strickland. Under such circumstances, it would not have been proper for the trial court to presume prejudice on the basis of the inadequate record before it. Neither will this Court. We cannot conclude that the District Court abused its discretion in denying Denny's motion for new trial based upon the record here. Accordingly, we affirm the District Court's denial of Denny's motion for new trial.

In doing so, however, we are not ruling on the merits of Denny's claim of prejudice -- the second prong of the Strickland test -- occasioned by the ineffective assistance of counsel described above. The failure of her second counsel has prevented Denny from effectively raising the merits of that issue in the District Court and in this appeal. As in the Fifth, Seventh and

10

Eighth Circuit cases above cited, we leave the further development of that issue under the test and procedure set forth above, to Denny in postconviction proceedings under Title 46, Chapter 21, MCA, should she so choose.

AFFIRMED.

_____
Justice

We Concur:

_____
Chief Justice

_____

_____

_____
Justices

11

Justice Terry N. Trieweiler specially concurring.

I concur in the result of the majority opinion. However, I do not agree with all that is said therein.

Specifically, I would not encourage defendant to believe that her claim of ineffective assistance of counsel has any merit which should be pursued by petition for post-conviction relief. Even if we assume that the witnesses whom she claims her attorney failed to call would have testified in the manner she now says they would have testified, their testimony would not have helped her case. Therefore, defendant cannot satisfy the second prong of the test for ineffective assistance of counsel which was set forth in *Strickland v. Washington* (1984), 466 U.S. 668, 104 S. Ct. 2052, 80 L. Ed. 2d 674.

Defendant was convicted based on the testimony of an undercover agent that she sold him illegal drugs. Where she might have been at some other time of day, or what she might have done in some other location, was simply not relevant and would have done nothing to rebut the direct evidence of her involvement in the drug transaction.

If defendant's presence at the mall at an earlier time was significant, would it also have been significant that she stopped to get gas earlier that morning? If she had testified to that effect and her attorney had failed to call the gas station attendant to corroborate her presence at the gas station, could that conceivably have satisfied the *Strickland* test for ineffective

12

assistance of counsel? Clearly not. Neither can the circumstances in this case.

For these reasons, I concur with the majority's decision to affirm the District Court. However, I do not concur with its suggestion that further time, expense, or effort should be wasted to determine whether or not witnesses could actually have corroborated defendant's testimony that she was at the Atrium Mall earlier in the day.

_____
Justice

Justice Hunt concurs in the foregoing concurrence.

_____
Justice

13

December 6, 1993

## CERTIFICATE OF SERVICE

I hereby certify that the following order was sent by United States mail, prepaid, to the following named:


William Hooks, Esq.
Office of the Appellate Defender
P. O. Box 200145, Capitol Station
Helena, MT  59620-0145

Hon. Joseph P. Mazurek, Attorney General
Jennifer Anders, Assistant
Justice Bldg.
Helena, MT  59620

David G. Rice
Hill County Attorney
P.O. Box 912
Havre, MT  59501-0912


ED SMITH
CLERK OF THE SUPREME COURT
STATE OF MONTANA

BY: _____
Deputy