No. 98-348

IN THE SUPREME COURT OF THE STATE OF MONTANA

2001 MT 115

STATE OF MONTANA,

Plaintiff and Respondent,

v.

WILLIAM LARRY WEAVER,

Defendant and Appellant.

APPEAL FROM: District Court of the Fourth Judicial District,

In and for the County of Missoula,

The Honorable John W. Larson, Judge presiding.

COUNSEL OF RECORD:

For Appellant:

William F. Hooks, Appellate Defender, Helena, Montana

Kristina Guest, Assistant Appellant Defender, Helena, Montana

For Respondent:

Hon. Joseph P. Mazurek, Attorney General; Jim Wheelis,

Assistant Attorney General, Helena, Montana

Fred R. Van Valkenburg, Missoula County Attorney, Missoula, Montana

Submitted on Briefs: March 7, 2001

Decided: July 2, 2001

Filed:

_____

Clerk

Justice Terry N. Trieweiler delivered the Opinion of the Court.

¶1 The defendant, William Larry Weaver, was charged by Information filed in the District Court for the Fourth Judicial District in Missoula County with deliberate homicide. Following trial by jury, he was found guilty of that charge and now appeals his conviction. We affirm the judgment of the District Court

¶2 Weaver presents the following issues on appeal:

¶3 1. Did Weaver receive ineffective assistance from his court-appointed counsel?

¶4 2. Did the District Court err when it refused to appoint substitute counsel?

¶5 3. Did the District Court err when it failed to address Weaver's motion for a new trial?

## FACTUAL BACKGROUND

¶6 The State of Montana charged William Larry Weaver with deliberate homicide in violation of § 45-5-102, MCA, in the District Court for the Fourth Judicial District in Missoula County on December 17, 1996. The Information alleged that Weaver shot and killed James Fremou on or about October 9, 1993. Fremou's body was discovered by a hunter in the woods near Crystal Creek outside of Missoula on November 7, 1993.

¶7 When found, Fremou's body was covered with maggots which were sent to an entomology laboratory for examination. Apparently maggots can be of assistance in determining the approximate time of death. The expert who originally analyzed the maggots, Dr. E. P. Catt, concluded in writing that Fremou probably died after October 13. During trial preparation, defense counsel learned that Dr. Catt had died since the preparation of his report. However, the State indicated a desire to bring in another expert to lay the foundation for Dr. Catt's entomology report. Just before the trial began,

Weaver's defense counsel, Ms. Margaret Borg, and the Missoula County prosecutors met with the trial court in chambers. Borg revealed that the second expert, Dr. Haskell, had reached a different conclusion than Dr. Catt, and that his conclusion was more favorable to the prosecution. Borg argued that the second expert should not be allowed to discuss the content of the report. The District Court held that Dr. Haskell could act only as a foundation witness for Catt's report but could not offer any different conclusions. The District Court further ordered Haskell to remain available in the event the defense wished to offer the report as evidence. The defense did not offer the report as evidence.

¶8 Weaver's trial commenced February 2, 1998, in Missoula. Both before and during trial, Weaver submitted a variety of motions and letters addressed to the trial judge. On February 9, 1998, the jury found Weaver guilty of deliberate homicide.

## DISCUSSION

## ISSUE 1

¶9 Did Weaver receive ineffective assistance from his court-appointed counsel?

¶10 Weaver contends that Borg rendered ineffective assistance when she failed to introduce an entomologist's report which contradicted the State's theory of when the victim died. Dr. Catt had concluded that Fremou died sometime after October 13, 1993. The State theorized that Weaver used a rifle owned by John McKean to shoot Fremou. Since McKean pawned the rifle on October 11, 1993, Weaver argues that the report would have directly contradicted the State's theory and that defense counsel's failure to introduce the report prejudiced his defense.

¶11 In deciding ineffective assistance of counsel claims, we have adopted the two-prong test from *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674. *See Hagen v. State*, 1999 MT 8, ¶ 10, 293 Mont. 60, ¶ 10, 973 P.2d 233, ¶ 10. Pursuant to the *Strickland* test, the defendant bears the burden of showing that counsel's performance fell below an objective standard of reasonableness. *Strickland*, 466 U.S. at 688, 104 S.Ct. at 2064; *State v. Coates* (1990), 241 Mont. 331, 337, 786 P.2d 1182, 1185. Next, the defendant must show that there was a reasonable probability that, but for counsel's errors, the result of the proceeding would have been different - i.e., that the defendant was prejudiced by counsel's errors. *Strickland*, 466 U.S. at 694, 104 S.Ct. at 2068; *Strickler v. Greene* (1999), 527 U.S. 263, 291, 119 S.Ct. 1936, 1953, 144 L.Ed.2d 286.

¶12 The prejudice prong of the *Strickland* test focuses on whether counsel's deficient performance renders the trial result unreliable or the proceeding fundamentally unfair. *Strickland*, 466 U.S. at 687, 104 S.Ct. 2064. The presumption is that counsel has rendered adequate assistance and has made all significant decisions in the exercise of reasonable professional judgment. *Strickland*, 466 U.S. at 690, 104 S.Ct. at 2066. This Court will not second guess tactical decisions made by defense counsel. *See State v. Sheppard* (1995), 270 Mont. 122, 128, 890 P.2d 754, 757. Finally, a defendant claiming on appeal that counsel was ineffective must ground his or her claim on facts within the record and not on mere conclusory allegations. *State v. Hurlbert* (1988), 232 Mont. 115, 120, 756 P.2d 1110, 1113.

¶13 Although the trial court would have permitted counsel to attempt to lay a foundation for the report, we have no basis in the record for determining whether that could have been done. Neither do we know what, if any, tactical or practical considerations Borg may have had for not offering the report. For example, was she concerned that admission of the report opened the door to rebuttal testimony from Dr. Haskell?

¶14 When the record does not provide the basis for the challenged acts or omissions of counsel, a defendant claiming ineffective assistance must raise that claim by petition for postconviction relief. *See State v. St. John*, 2001 MT 1, ¶ 40, 304 Mont. 47, ¶ 40, 15 P.3d 970, ¶ 40; *State v. Bromgard* (1995), 273 Mont. 20, 23, 901 P.2d 611, 613; *State v. Black* (1995), 270 Mont. 329, 338, 891 P.2d 1162, 1167-68. The record demonstrates that Borg understood the usefulness of the report to contradict the State's assertion that Weaver used McKean's weapon to kill Fremou. Borg also took steps to insure that the second entomologist was present to supply foundation for the deceased entomologist's report in the event that was possible. However, the record does not demonstrate why Borg did not offer the report. Because we cannot address this aspect of Weaver's ineffective assistance of counsel claim without considering matters outside the record, we decline to review this issue on appeal. *See State v. Henry* (1995), 271 Mont. 491, 496, 898 P.2d 1195, 1198.

## ISSUE 2

¶15 Did the District Court err when it refused to appoint substitute counsel?

¶16 Weaver argues that the District Court erred when it refused to conduct an appropriate inquiry into the validity of numerous complaints about his attorney. Weaver notes that he submitted several written complaints to the District Court and raised the issue during two

status hearings prior to trial. Weaver alleged that his counsel failed to meet with him regularly, failed to file motions on his behalf, and failed to adequately discuss trial strategy.

¶17 The State contends that the District Court's inquiry regarding Weaver's requests for substitution of counsel were adequate and revealed no seemingly substantial complaints. Moreover, the State argues that the District Court properly applied its discretion after considering its experience with defense counsel's work nd capabilities and found no basis for substitution of counsel.

¶18 Denials of requests for the appointment of new counsel are reviewed for abuse of discretion. *State v. Gallagher*, 1998 MT 70, ¶ 10, 288 Mont. 180, ¶ 10, 955 P.2d 1371, ¶ 10. If a defendant raises a "seemingly substantial complaint" about the defendant's relationship with counsel and requests that the court appoint substitute counsel, the court should conduct a hearing to determine the validity of the defendant's claims and the request for substitution of counsel. *Gallagher*, ¶ 14. The threshold issue is not whether counsel was ineffective, but whether the court made an adequate initial inquiry. *Gallagher*, ¶ 14. The standard for appointment of new counsel requires that the defendant demonstrate an irreconcilable conflict so great that it results in a total lack of communication. *Gallagher*, ¶ 24.

¶19 We conclude that the District Court's inquiries regarding Weaver's requests for substitution of counsel were adequate and revealed no seemingly substantial complaints that would require an additional hearing.

¶20 The District Court file includes approximately sixty-four motions submitted by Weaver during the course of these proceedings. However, the record also indicates that Borg reviewed all of Weaver's motions with him and concluded that they were either inappropriate, premature, or covered by the omnibus form. When asked by the District Court, Weaver agreed to proceed with Borg as his counsel. The transcript of the November 25, 1997, hearing includes the following exchange:

> Ms. Borg: . . . [Mr. Weaver] has told me he wishes to be represented by counsel, and I have said to him then that any motions that will be filed will be filed by me. And I've asked him to cease and desist with the barrage of paperwork.
>
> Yesterday I believe he sent a motion to the Clerk of Court for filing. I believe it's

captioned in terms of a writ of habeas corpus. He and I have discussed this before, and I have told him that we will be filing a writ in the proper legal form on his behalf, and I would ask that the Court not file his pro se motion.

The Court: Do you understand the process?

The Defendant: Yes, sir.

The Court: And you desire to be represented by counsel?

The Defendant: Yes, sir.

The Court: Then your counsel will be filing motions, and the Clerk is directed not to file anything that you claim or contend as a motion.

. . . .

Ms. Borg: . . . Mr. Weaver has made reference on some of these documents to 64 motions that he wishes to be filed on his behalf. He and I have gone through every one of those. And I have responded in three fashions: One, either the motions are totally inappropriate; secondly, they were premature; or thirdly, they are covered in our omnibus checklist.

The Court: Is that clear?

The Defendant: Yes, sir.

¶21 At a hearing on January 21, 1998, the District Court asked Weaver if he had any concerns about defense counsel:

The Court: Very well. Now, Mr. Weaver, early on when you came into custody here you were assigned Ms. Borg and then wrote the court several letters. We brought you into court and asked you if there were any concerns about counsel at that time, and you said no and I believe that was back in -

Defendant: Well, sir -

The Court: Let me look here. I believe that was back in November, and then

subsequently you again have been writing a lot to the court.

Defendant: Yes, sir.

The Court: What's your position at this time?

Defendant: Well, sir, it's 12 days to my trial, and I was wanting a writ of habeas corpus filed, and I've turned in like 60 motions on the file. Nothing has been done. It would be impossible to file any motions in eight days to send them to the clerk of the court's office and have you hear them and rule on them. I need something done, and I need some motions filed, and I'd like to have a writ of habeas corpus filed, because I've been denied due process from Georgia. They just came and got me. I was never served with a detainer. I didn't have no idea they was even coming. Ah, you know. I never had a chance to challenge the detainer or the temporary custody and I just feel it's - in order that I be able to file a writ of habeas corpus.

The Court: Ms. Borg?

Ms. Borg: Judge, I've talked to Mr. Weaver about it and have stood in this court and told you that we would research that issue, and in the event we felt that could be supported I would file the writ of habeas corpus. We have not done that. Marcia Jacobson is an attorney, practices in my office, and does our legal research. Has researched the matter, gathered the information from Georgia, she has briefed me, written a detailed memorandum, and I have given that to Mr. Weaver. It's my perception, based on her research and my understanding of the law, that I cannot support a writ of habeas corpus and have not filed one.

¶22 When taken in combination, the preceding excerpts from the trial transcript demonstrate that the District Court conducted an adequate inquiry. Moreover, Weaver fails to present evidence which suggests that he and defense counsel had a breakdown in communication or that defense counsel was otherwise deficient in her representation. Rather, the record suggests that defense counsel considered her options and made an informed decision on how to best represent Weaver. The District Court inquired about Weaver's complaints and found no seemingly substantial issues to resolve. Therefore, we conclude that the District Court was not required to proceed further and did not abuse its discretion when it declined to appoint substitute counsel.

## ISSUE 3

¶23 Did the District Court err when it failed to address Weaver's motion for a new trial?

¶24 Weaver's final argument on appeal is that the District Court erred when it failed to consider and rule on his pro se motion for a new trial. However, as the preceding discussion demonstrates, Weaver understood that defense counsel would submit all motions on his behalf. We have previously held that it is not error for a district court to refuse pro se motions from defendants who are represented by counsel. *See State v. Harvey* (1986), 219 Mont. 402, 409-10, 713 P.2d 517, 522. Therefore, we conclude that the District Court did not err when it did so in this case. The judgment of the District Court is affirmed.

/S/ TERRY N. TRIEWEILER

We Concur:

/S/ KARLA M. GRAY

/S/ JAMES C. NELSON

/S/ W. WILLIAM LEAPHART

/S/ PATRICIA COTTER