No. 04-272

IN THE SUPREME COURT OF THE STATE OF MONTANA

2005 MT 158

WILLIAM LARRY WEAVER,

        Petitioner and Appellant,

   v.

STATE OF MONTANA,

        Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and for the County of Missoula, Cause No. DV-02-624,
The Honorable John Larson, Judge presiding.

COUNSEL OF RECORD:

        For Appellant:

           Morgan Modine, Attorney at Law, Missoula, Montana

        For Respondent:

           Hon. Mike McGrath, Attorney General; Jim Wheelis,
Assistant Attorney General, Helena, Montana

           Fred Van Valkenburg, Missoula County Attorney; Kirsten H. LaCroix,
Deputy County Attorney, Missoula, Montana

Submitted on Briefs:  April 26, 2005

Decided:  June 21, 2005

Filed:

_____
Clerk

Justice Brian Morris delivered the Opinion of the Court.

¶1 William Larry Weaver (Weaver) appeals from the denial by the Fourth Judicial District Court, Missoula County, of his Petition for Postconviction Relief asserting ineffective assistance of counsel. We affirm.

¶2 Weaver raises the following issues on appeal:

¶3 1. Whether the District Court erred in rejecting Weaver's claim that defense counsel was ineffective when she failed to interview potential witnesses with alleged exculpatory testimony.

¶4 2. Whether the District Court correctly concluded that defense counsel was not ineffective when she failed to call potential witnesses to testify and instead presented their alleged exculpatory evidence through the State's chief witness.

¶5 3. Whether the District Court erred when it found defense counsel's failure to offer a potentially exculpatory forensic entomological report at trial did not rise to the level of ineffective assistance of counsel.

BACKGROUND

¶6 Weaver confessed killing James Fremou (Fremou) to Anthony "Shorty" Dye (Dye), his Georgia prison cellmate. Dye contacted Montana authorities and informed them of Weaver's confession. The State charged Weaver with deliberate homicide and transported him to Missoula for trial.

¶7 The District Court appointed Margaret Borg (Borg) of the Public Defender's office to represent Weaver. Borg received police reports and taped interviews demonstrating the

2

existence of potential alibi witnesses, other suspects, and persons who allegedly heard confessions by persons other than Weaver. Although Borg did not contact or interview any of those potential witnesses before trial, she did bring two inmates from the Georgia prison to testify in order to impeach Dye's credibility.

¶8     The State argued that Weaver killed Fremou on October 9, 1993. The State sent maggots discovered during the autopsy on Fremou's body to the Washington State University Forensic Entomology Laboratory in Pullman, Washington, to confirm the date of Fremou's death. E.P. Catts, Ph.D. (Catts), produced an entomological report (the Catts report) that concluded, however, that Fremou died sometime *after* October 13, 1993. This date conflicted with the State's theory that Fremou had been killed on October 9, 1993–a date *before* the Catts report estimated as Fremou's date of death. The State also theorized that Weaver used a rifle owned by John McKean (McKean) to shoot Fremou–a rifle that McKean pawned on October 11, 2003–again, a date *before* the Catts report estimated that Fremou had died. McKean did not testify as both parties apparently were unaware of his whereabouts at the time of trial. The State's chief investigator and witness, Captain Gerald Crego (Crego), did tell the jury that McKean's gun had been pawned and provided other relevant testimony about McKean's possible involvement in the matter.

¶9     Both Borg and the State discovered the day before trial that the entomologist, Catts, had died approximately eight months before the State had listed him as a witness. The State sought to use a new expert witness, Dr. Neal Haskell (Haskell), to support its theory regarding the date of Fremou's death. Borg met with Haskell immediately before trial and

discovered that he had reached a different conclusion from Catts regarding the age of the maggots and the corresponding time of Fremou's death that proved consistent with the State's theory. The State requested a continuance so it could have Haskell prepare a new report for use at trial.

¶10 Borg, in consultation with Weaver, argued against the State's request for a continuance. The District Court denied the State's request for a continuance and made Haskell available only as a foundation witness for the Catts report. Borg recognized, however, that allowing Haskell to serve as a foundation witness for the Catts report placed Weaver at risk of the State later using Haskell as a potential rebuttal witness who would contradict the Catts report regarding Fremou's time of death. Borg elected not to offer the Catts report as evidence and Haskell did not testify.

¶11 The jury convicted Weaver of deliberate homicide and the District Court sentenced him to life in prison without the possibility of parole with an additional ten years added for use of a firearm. We affirmed Weaver's sentence in *State v. Weaver*, 2001 MT 115, 305 Mont. 315, 28 P.3d 451, but declined to address his ineffective assistance of counsel claim as the trial record failed to provide an explanation for Borg's alleged ineffective acts or omissions. *Weaver*, ¶ 14.

¶12 Weaver filed his petition for postconviction relief claiming that his conviction resulted from Borg's ineffective assistance. The District Court held a hearing where Borg, Crego, Weaver, and Gloria Jean Clark, a potential witness for Weaver's trial, all testified. Weaver also obtained what he represented to be an affidavit from McKean in which McKean asserted

4

that he did not provide his gun to Weaver. The District Court denied Weaver's attempt to introduce McKean's affidavit, however, because it determined that McKean's affidavit had not been authenticated, and therefore, proved to be neither credible nor material to the proceedings. The District Court rejected all of Weaver's claims based on its finding that Borg had engaged in reasonable tactical trial decisions and, therefore, had not been ineffective. Weaver appeals.

## STANDARD OF REVIEW

¶13    We review a district court's denial of a petition for postconviction relief to determine whether the court's findings of fact are clearly erroneous and whether its conclusions of law are correct. *Clausell v. State*, 2005 MT 33, ¶ 10, 326 Mont. 63, ¶ 10, 106 P.3d 1175, ¶ 10 (citation omitted). Claims of ineffective assistance of counsel constitute mixed questions of law and fact that we review *de novo*. *Clausell*, ¶ 10.

## DISCUSSION

¶14    The Sixth Amendment of the United States Constitution and Article II, Section 24, of the Montana Constitution guarantee the right to effective assistance of counsel. We have adopted the two-part test of *Strickland v. Washington* (1984), 466 U.S. 668, 104 S.Ct. 2052, 80 L.Ed.2d 674, to evaluate ineffective assistance of counsel claims. *Clausell*, ¶ 19 (citing *State v. Kougl*, 2004 MT 243, ¶ 11, 323 Mont. 6, ¶ 11, 97 P.3d 1095, ¶ 11).

¶15    Under this test Weaver first must demonstrate that his counsel's actions fell below an objective standard of reasonableness or were deficient. *Clausell*, ¶ 19. Weaver must overcome a strong presumption that his counsel's defense strategies and trial tactics fall

5

within a wide range of reasonable and sound professional decisions. *Clausell*, ¶ 19. If Weaver meets the first prong, he then must show that his counsel's deficient performance prejudiced him to the extent that a reasonable probability exists that the result of the proceeding would have been different had counsel not performed ineffectively. *Clausell*, ¶ 19. A reasonable probability means a probability sufficient to undermine confidence in the outcome, but it does not require that a defendant demonstrate he would have been acquitted. *Clausell*, ¶ 19.

## FAILURE TO INTERVIEW WITNESSES

¶16 Weaver complains that Borg's failure to speak with any of the potential witnesses that he provided or familiarize herself with the actual reports and tape recordings made by investigators created omissions of exculpatory facts that could have been presented at trial–omissions that prejudiced his case. "A claim of failure to interview a witness may sound impressive in the abstract, but it cannot establish ineffective assistance when the person's account is otherwise fairly known to defense counsel." *State v. Thomas* (1997), 285 Mont. 112, 119, 946 P.2d 140, 144 (quoting *United States v. Decoster* (D.C.Cir. 1976), 624 F.2d 196, 209).

¶17 In *Thomas*, another deliberate homicide case, we determined that the defendant did not prove his counsel ineffective simply because counsel failed to conduct an independent investigation into possible exculpatory evidence. We noted defense counsel's duty either "to make reasonable investigations or to make a reasonable decision that makes particular investigations unnecessary." *Thomas*, 285 Mont. at 119, 946 P.2d at 144 (quoting

6

*Strickland,* 466 U.S. at 691, 104 S.Ct. at 2066). We assess a decision not to investigate for reasonableness in light of all of the circumstances of the case, "applying a heavy measure of deference to counsel's judgments." *Thomas,* 285 Mont. at 118, 946 P.2d at 143.

¶18    We likewise find Borg's decisions in this matter to be reasonable in light of the circumstances. A review of the record demonstrates that Borg knew the possible accounts of exculpatory testimony that may have been solicited from Weaver's list of potential witnesses. Borg further testified that "[t]here were lots of witnesses in this case that said so-and-so told me this. So-and-so told me that. Someone confessed. Someone said they were there. Someone said this and that and something else. Crego had followed all of those leads," and conceded at trial that the State had considered other suspects.

¶19    It appears that Borg weighed all of the possible exculpatory testimony in light of the "squirrelly" characters of Weaver's potential witnesses and made a "reasonable decision" that investigating those witnesses proved unnecessary. *Thomas,* 285 Mont. at 119, 946 P.2d at 144. This decision seems particularly apt given that Borg elicited similar exculpatory testimony, that would have been provided by Weaver's list of potential witnesses, from Crego, the State's chief witness. We conclude that Weaver fails to demonstrate that Borg's decision not to investigate potential witnesses fell below an objective standard of reasonableness.

¶20    Even if we determined that Borg's failure to interview *any* potential witnesses requested by Weaver fell below an objective standard of reasonableness, however, we cannot justify how that failure prejudiced Weaver's case to the extent that a reasonable probability

7

exists that the result of the trial would have been different. We have recognized the defendant's heavy burden under *Strickland* can lead to a situation where the court may determine that counsel's error "possibly prejudiced the defendant, yet conclude that such error did not rise to a level serious enough to result in a verdict unworthy of confidence." *State v. Hagen*, 2002 MT 190, ¶ 23, 311 Mont. 117, ¶ 23, 53 P.3d 885, ¶ 23.

¶21    In cases where counsel fails to conduct adequate pretrial investigation we focus our inquiry as to what information would have been obtained from such investigation and whether such information would have produced a different result. *State v. Denny* (1993), 262 Mont. 248, 255, 865 P.2d 226, 230. Weaver, in this instance, has not demonstrated that Borg's independent investigation into his potential witnesses would have borne a different result, particularly given that Borg's failure to interview potential witnesses in this matter did not result in a "factual vacuum." *Nealy v. Cabana* (1985), 764 F.2d 1173, 1178 (relied on by *Denny*, 262 Mont. at 253, 865 P.2d at 228-29, for the proposition that "*at a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case*[]"). As we pointed out in ¶¶ 18-19 above, Borg already knew the possible accounts of exculpatory testimony that may have been solicited from Weaver's list of potential witnesses and she instead made a decision to elicit similar exculpatory testimony from the State's chief witness.

¶22    We cannot see how Weaver's potential witnesses, who could have proven "squirrelly" on the stand, would have overcome the State's witnesses and evidence against him. More importantly, Weaver has failed to identify any fact that would have been brought to the jury's

8

attention by the potential witnesses that the cross-examination of Crego conducted by his trial counsel, Borg, failed to highlight that would have changed the outcome of his trial.

¶23    The dissent suggests that Weaver's trial counsel and now postconviction counsel have failed to render effective assistance in failing to raise specific facts that could have been provided by Weaver's list of potential witnesses. *See* ¶ 50. This appeal addresses only Weaver's claim that his trial counsel rendered ineffective assistance. We cannot know based on the record before us, however, whether Weaver's postconviction counsel ignored specific facts offered by Weaver that his postconviction counsel failed to present to the court. Alternatively, we cannot know based on the record before us whether Weaver simply had no new facts that his prospective witnesses could have provided. Weaver had the opportunity through the postconviction hearing to present any such facts and he and his postconviction counsel failed to do so. As a result, we conclude that Weaver failed to carry his burden of establishing that Borg's failure to interview potential witnesses constituted ineffective assistance of counsel to the extent that it resulted in prejudice to him that raises a reasonable probability that the outcome of his trial would have been different.

FAILURE TO CALL CERTAIN WITNESSES

¶24    Weaver next argues that Borg rendered ineffective assistance when she failed to call potential witnesses–those same witnesses she failed to interview–to testify. Weaver claims that those potential witnesses would have provided testimony regarding other potential suspects' alleged confessions and other statements that may have cast a reasonable doubt on his guilt, which of course, constituted his overall trial strategy. Instead of calling all of the

9

potential witnesses to testify, however, Borg elected to cross-examine the State's chief witness, Crego, about his investigation into the other potential suspects.

¶25    Counsel's decisions relating to presenting her case, including whether to introduce evidence or produce witnesses, generally constitute matters of trial tactics and strategy and we will not find ineffective assistance of counsel claim in counsel's tactical decisions. *State v. Henry* (1995), 271 Mont. 491, 495, 898 P.2d 1195, 1197.   Borg testified at the postconviction hearing that she doubted the credibility of Weaver's witnesses as they all carried several potential risks.  She stated that she "knew what kind of witnesses they were going to be, and [she] knew they weren't going to take the stand and confess to killing Jim Fremou."  Borg recognized the critical nature of the exculpatory information and she thought the best way "to deliver that information in the very best fashion was to have it come through [Crego,] the captain of detectives for Missoula County and the investigating officer in the case and the lead witness for the state."  Borg further testified that she was "convinced that there is nothing in the [exculpatory] information that was critical to this case that wasn't presented to the jury[.]"   Weaver fails to articulate any fact to which any of those potential witnesses would have testified that Borg did not draw out in another way during trial. Indeed, Borg's cross-examination of Crego established that the State considered other suspects in Fremou's homicide.

¶26    We are satisfied after reviewing the record that Borg made a reasonable decision to elicit the exculpatory facts through Crego.  Crego conceded a number of facts on cross-examination that proved damaging to the State's case and supported the defense theory of

10

reasonable doubt, including pointing at three other potential suspects. Borg used those facts to make her closing argument concerning the existence of reasonable doubt of Weaver's guilt.

¶27 Although Weaver contends that having live witnesses who showed emotions to the jury would have better assisted his case, he also agreed that some of the witnesses may have hurt his case. Weaver's argument boils down to his claim that Borg did not call enough witnesses, and even if testimony that these witnesses would have provided proved damaging to him, it did not matter because he was innocent. The District Court found that more witnesses or a longer trial do not necessarily make a case stronger. We agree.

¶28 We held in *Hagen*, ¶¶ 20-23, that counsel's failure to do a better job of investigating and presenting testimony and a more thorough job of interviewing and preparing witnesses did not prejudice the defendant to the extent that counsel provided ineffective assistance of counsel. As in *Hagen*, we agree with the State that Weaver fails to establish that Borg's decision not to call the other witnesses, whose testimony Crego summarized, constituted anything other than a legitimate tactical choice. We agree that Borg's decision not to call every witness whom Weaver identified carried fewer risks and promoted Weaver's best interest at trial.

¶29 Weaver also argues that Borg rendered ineffective assistance when she failed to impeach Dye's credibility to his satisfaction. Borg again elicited testimony from Crego during her cross-examination that damaged Dye's credibility. She also brought in two witnesses from Georgia that Weaver requested in order to impeach Dye. Weaver mentions

11

no other witnesses who could have undermined Dye's credibility, except for Dye's mother. Borg unsuccessfully attempted to locate Dye's mother and Weaver could not provide any further information regarding her whereabouts. We determine that Borg adequately attempted to impeach Dye according to the defense theory of raising reasonable doubt. The jury considered Crego's statement and the other witnesses' testimony concerning Dye's reliability and found it lacking. Borg cannot be held responsible simply based on the outcome of the jury's verdict.

## FAILURE TO INTRODUCE THE CATTS REPORT

¶30 Weaver contends, as he did on direct appeal, that introduction of the Catts report would have created a reasonable doubt as to the date of Fremou's murder and Weaver's possible role in it. In *Weaver*, we discussed the potential importance of the Catts report and Borg's acknowledgment of it. She understood the usefulness of the Catts report to contradict the State's assertion that Weaver used McKean's weapon to kill Fremou. *Weaver*, ¶ 14. Borg also took steps to insure that the second entomologist, Haskell, was present to supply foundation for the deceased entomologist's report in the event that was possible. *Weaver*, ¶ 14.

¶31 We determined, however, that the trial record did not demonstrate why Borg had failed to offer the Catts report. *Weaver*, ¶ 14. We thus concluded that the issue proved better suited for a petition for postconviction relief. *Weaver*, ¶ 14. The rest of the story now can be told.

¶32 Borg testified at the postconviction hearing that she worried that admitting the Catts

report opened the door to rebuttal testimony from Haskell, the State's new expert witness, who could "certainly undo the value of the Catts report." Borg stated that Haskell not only impressed her with his credentials, but she became concerned that he would come across as a "very articulate and thoughtful and well-spoken fellow[,]" who would make a very good witness.

¶33 Borg was uneasy about Haskell testifying that the date of Fremou's death occurred before McKean's rifle had been pawned because it would have eliminated her reasonable doubt argument about the date of death–a primary defense theory. This type of rebuttal testimony flew in the face of Weaver's strongest defense of proving reasonable doubt about his guilt. Borg testified that:

> [i]t was an uncomfortable situation. I had several things going on. The Catts report I didn't want to lose, but the price to hold onto it was greater than I was willing to pay. It was my opinion that . . . the ability to get another expert was slim to none because there aren't many of these. . . . and my defendant was insistent that we not ask for a continuance.

¶34 The State requested a continuance to allow time for Haskell to issue a report in their favor so Haskell could be called as an expert witness to establish the time of Fremou's death. Borg discussed this dilemma with Weaver who apparently agreed with her recommendation to resist any such request by the State. In the end, the State did not introduce the Catts report and Haskell did not testify. We agree with the District Court's finding that Borg's decision not to call Haskell as a foundation witness for the Catts report foreclosed the State's ability to call Haskell as its "star witness," and therefore, her decision was "tactical and the result of a conscientious, weighed decision made after consultation" with Weaver.

CONCLUSION

¶35     After all is said and done, Weaver has failed to overcome the strong presumption that Borg's defense strategies and trial tactics fell within a wide range of reasonable and sound professional decisions.  Although he may not agree with the tactics or decisions that were made, particularly because the jury convicted him and the District Court sentenced him to prison, he has not demonstrated in this appeal that Borg's actions fell below an objective standard of reasonableness.  Even if we deemed some of Borg's decisions as deficient, Weaver fails to demonstrate that he suffered prejudice to the point that a reasonable probability exists that the result of the proceeding would have been different had counsel not performed ineffectively.  We conclude that Weaver has failed to meet his burden in demonstrating that Borg provided ineffective assistance of counsel in this matter and the District Court correctly denied Weaver's Petition for Postconviction Relief.  We affirm the District Court on all issues.

/S/ BRIAN MORRIS

We Concur:

/S/ JOHN WARNER

14

Justice Jim Rice concurring.

¶36    I concur with the Court on the resolution of all issues.

¶37    Under Issue 1, however, I am not persuaded by the Court's conclusion that defense counsel's failure to interview any of the potential witnesses did not fall below an objective standard of reasonableness. The State brought a homicide charge against Weaver premised upon his alleged confession and circumstantial evidence. There was no direct evidence against Weaver. There were, however, many witnesses who had made various statements about others who may have been involved with the crime. In the absence of direct proof of the crime, these statements had a heightened significance: they could potentially identify a different perpetrator.

¶38    Defense counsel respected Officer Crego and believed that "Crego had followed all those leads." However, under the circumstances of this case, I believe it was defense counsel's minimum obligation to independently investigate the witnesses to the extent necessary to verify Officer Crego's conclusions. It is certainly not beyond the realm of possibility that another interview, conducted by the defense instead of the State, could have elicited different answers from the witnesses–particularly if the witnesses were "squirrelly" in nature, as defense counsel believed. Defense counsel apparently did not consider that the "squirrelly" nature of the witnesses may have enhanced the possibility that the statements they originally gave to law enforcement were less than accurate or subject to change.

¶39    I would conclude, therefore, that defense counsel's actions fell below an objective standard of reasonableness "in light of all of the circumstances of the case." *State v. Thomas*

15

(1997), 285 Mont. 112, 119, 946 P.2d 140, 144.  Nonetheless, I concur with the Court's determination that Weaver has not demonstrated a reasonable probability that the trial result would have been different had counsel not failed in this regard.  Weaver has not demonstrated that anything which defense counsel would have learned by an appropriate investigation rose to the level of significance necessary to affect the outcome.


/S/ JIM RICE


Chief Justice Karla M. Gray joins in the concurrence of Justice Rice.

/S/ KARLA M. GRAY

Justice Patricia O. Cotter dissents.

¶40 I dissent. I would conclude that the failure of counsel for Weaver to introduce the Catts' entomological report constituted ineffective assistance of counsel. I would therefore reverse Weaver's conviction and remand for a new trial.

¶41 As the Court notes at ¶ 33, the primary defense theory was that the State was wrong about the date of Fremou's death. In support of this theory, Borg apparently elicited testimony from Crego that McKean's weapon--which the State alleged was used by Weaver to kill Fremou--was pawned on October 11, 2003. This was two days after the date the State claimed Weaver killed Fremou, but three days *before* the earliest date of death fixed by Catts. Thus, evidence of Catts' conclusions would have radically undermined the State's case.

¶42 Borg's contention that, because Haskell might have been able to contradict the Catts' report, the price of admission of the Catts' report was too high, is unreasonable. With Catts' report, the jury would have before it evidence from an expert renowned in his field that cast direct, objective, and scientific doubt on the date of death. Without it, the jury had only surmise. While the court may well have allowed Haskell to present his countervailing theory had the Catts' report been introduced, so what? The jury would then be faced with reports from two respected experts which reached different conclusions about the date of Fremou's death, one inculpatory of Weaver's guilt and one exculpatory--in other words, reasonable doubt. Moreover, given that Dr. Catts was Dr. Haskell's mentor, a fact known to Borg, it is

17

highly likely that, while Haskell might have disagreed with Catts' conclusions, he would have readily conceded Catts' expertise and qualifications.

¶43 As we stated in *Crawford v. State*, 2003 MT 118, ¶ 18, 315 Mont. 480, ¶ 18, 68 P.3d 848, ¶ 18, jurors are naturally inclined to accord greater weight to objective scientific evidence than to the subjective observations of the non-scientist. The State's case against Weaver was built upon circumstantial evidence and the testimony of a jailhouse snitch whose credibility was called into question through the testimony of witnesses. Moreover, as the Court concedes at ¶ 26, Crego made a number of concessions during cross-examination that supported the defense theory of reasonable doubt. The scientific evidence that Borg had at her fingertips would have substantially elevated the plausibility of her reasonable doubt argument. Borg had everything to gain and virtually nothing to lose by introducing the Catts' report. Therefore, in my view, Borg's decision not to introduce this evidence fell below the objective standard of reasonableness, and a reasonable probability does exist that, had she offered the Catts' evidence, the result of the proceeding might well have been different. *Clausell*, ¶ 19.

¶44 I would therefore conclude that Borg rendered ineffective assistance of counsel to Weaver, and I would reverse and remand for a new trial. I dissent from our refusal to do.

/S/ PATRICIA O. COTTER

Justice W. William Leaphart joins in the dissent of Justice Patricia O. Cotter.

/S/ W. WILLIAM LEAPHART

Justice James C. Nelson dissents.

¶45     I cannot join the Court's Opinion in this case as to either Issues One, Two or Three.

¶46     As to Issues One and Two, we conclude that trial counsel's decision not to interview Weaver's witnesses was a tactical decision based on her conclusion that the witnesses were "squirrelly" and, therefore, not likely to give as credible testimony as the State's lead investigator.

¶47     In *State v. Denny* (1993), 262 Mont. 248, 865 P.2d 226, we addressed a similar situation. Denny defended charges of conspiracy to sell dangerous drugs on the basis of her innocence. *Denny*, 262 Mont. at 250, 252, 865 P.2d at 227-28. Trial counsel, knowing that Denny would need help at trial, failed to interview possible witnesses who could have supported her testimony. *Denny*, 262 Mont. at 252, 865 P.2d at 228. As here, defense counsel made a tactical decision not to interview or call the witnesses based on counsel's suppositions and characterizations about the testimony that the witnesses would likely provide. *Denny*, 262 Mont. at 252, 865 P.2d at 228.

¶48     Concluding that defense counsel should have at least interviewed the witnesses before rejecting the possibility of using their testimony at trial, we adopted the following reasoning of the Fifth and D.C. Circuit Courts of Appeal:

> "[A]t a minimum, counsel has the duty to interview potential witnesses and to make an independent investigation of the facts and circumstances of the case." [Citing the American Bar Association Standards for Criminal Justice.]
> . . . .

20

"*The complete failure to investigate potentially corroborating witnesses, however, can hardly be considered a tactical decision.*"

*Denny*, 262 Mont. at 253, 865 P.2d at 228-29 (citations omitted) (emphasis in original).

¶49 We next proceeded to adopt a test from the Seventh Circuit. We observed, as is implicit in the Court's Opinion here, that

"*if the potential witnesses are not called, it is incumbent on the petitioner to explain their absence and to demonstrate, with some precision, the content of the testimony they would have given at trial.* The district court simply cannot fulfill its obligation under *Strickland* to assess prejudice until the petitioner has met his burden of supplying sufficiently precise information."

*Denny*, 262 Mont. at 254, 865 P.2d at 229-30 (citation omitted) (emphasis in original).

¶50 Unlike this Court in the case *sub judice*, however, we then went the next logical step. We concluded that Denny's counsel at the hearing on her motion for new trial--here, the attorney-equivalent to Weaver's postconviction counsel (who is the same person as his counsel in this appeal)--was ineffective in failing to present at Denny's motion hearing--the equivalent of Weaver's postconviction hearing--sufficient precise information about the prospective testimony of the witnesses who were never interviewed by trial counsel, so as to allow the district court to assess prejudice. *Denny*, 262 Mont. at 255, 865 P.2d at 230.

¶51 The Court's Opinion to the contrary, it was postconviction counsel's duty under *Denny* to interview the witnesses not interviewed by trial counsel and, if favorable, to bring the information before the postconviction court. In *Denny*, we adopted the following statement of the law from the Eighth Circuit's decision in *Lawrence v. Armontrout* (8th Cir. 1990), 900 F.2d 127, 130:

"A petitioner seeking relief based on ineffective assistance of counsel must 'affirmatively prove prejudice.' To affirmatively prove prejudice, a petitioner ordinarily must show not only that the testimony of uncalled witnesses would have been favorable, but also that those witnesses would have testified at trial. Moreover, if potential trial witnesses are not called to testify at a post-conviction review hearing, the petitioner ordinarily should explain their absence and 'demonstrate, with some precision, the content of the testimony they would have given at trial.' *In view of these requirements, we believe that [petitioner's] postconviction counsel also failed to exercise the skill and diligence expected of a reasonably competent attorney under similar circumstances.*"

*Denny*, 262 Mont. at 255, 865 P.2d at 230 (emphasis added). Here, postconviction counsel unarguably failed in this obligation; he did not interview the witnesses either. That is evident from the record. Apparently, under the Court's view, Weaver will now be entitled to a second postconviction hearing with new counsel to demonstrate that his first postconviction counsel was ineffective.

¶52 So there, in a nutshell, is Weaver's conundrum. Defense counsel, without interviews, concluded that the potential witnesses' testimony would not be helpful at trial because the witnesses were "squirrelly." And, to add insult to injury, we conclude that trial counsel's decision was a correct tactical decision because Weaver--translated, postconviction counsel--failed to present the District Court with any information to the contrary about the prospective testimony.

¶53 The Court ignores *Denny* and our analysis founders. Weaver can't win for losing. Both counsel failed to render effective assistance. And we agree that was appropriate.

22

¶54 As to Issue Three, I do not necessarily disagree that trial counsel made the right decision in not offering the Catts entomological report. There were not many alternatives left given that on the day before trial counsel learned that Catts had died eight months earlier.

¶55 It is undisputed that the Catts report was damning. Apparently even the prosecution acknowledged that the report might well torpedo the State's case because the report would contradict the State's theory about the time of Fremou's death and the weapon used. In that light, one might reasonably expect that the Defense would call Catts as its witness and that the State might not want to call Catts at all. If that premise is reasonable, it begs the question of why trial counsel did not, early on, interview and subpoena Catts in sufficient time before trial to: (1) assure his presence and testimony; or (2), as it would have turned out, discover that he was dead. Had counsel learned of Catts' death at some time other than the day before the trial, she well might have been able to obtain a new expert. I conclude that, under these facts, trial counsel did not render effective assistance.

¶56 I would reverse and order a new trial. I dissent.

/S/ JAMES C. NELSON