No. 04-581

IN THE SUPREME COURT OF THE STATE OF MONTANA

2006 MT 39

MARTIN REED SWAN,

Petitioner and Appellant,

v.

STATE OF MONTANA,

Respondent and Respondent.

APPEAL FROM:    District Court of the Fourth Judicial District,
In and For the County of Missoula, Cause No. DV-01-987
Honorable Ed McLean, Presiding Judge

COUNSEL OF RECORD:

For Appellant:

John E. Smith, Smith & Thiel Law Offices, Missoula, Montana

For Respondent:

Honorable Mike McGrath, Attorney General; Micheal S. Wellenstein,
Assistant Attorney General, Helena, Montana

Fred Van Valkenburg, Missoula County Attorney; Kirsten LaCroix, Deputy
County Attorney, Missoula, Montana

Submitted on Briefs: October 4, 2005

Decided:  February 28, 2006

Filed:

_____
Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1 Martin Reed Swan (Swan) appeals from the order entered by the Fourth Judicial District Court, Missoula County, denying his amended petition for postconviction relief. We affirm.

¶2 The issue on appeal is whether the District Court erred in denying Swan's amended petition for postconviction relief.

## BACKGROUND

¶3 In 1998, a jury found Swan guilty of deliberate homicide and the District Court sentenced him to a life term at the Montana State Prison without the possibility of parole. Swan appealed, raising the sole issue of whether the District Court violated his constitutional right to represent himself when it denied his motion to dismiss his court-appointed counsel and proceed to trial *pro se*. We concluded that the District Court did not err in denying Swan's motion because Swan's request to proceed *pro se* was not unequivocal, and affirmed his conviction. *State v. Swan*, 2000 MT 246, ¶ 25, 301 Mont. 439, ¶ 25, 10 P.3d 102, ¶ 25.

¶4 In December of 2001, Swan filed a *pro* se petition for postconviction relief alleging that he had been denied effective assistance of counsel and a fair trial in the underlying proceeding. He also requested the appointment of counsel to represent him in the postconviction proceeding. Swan filed an amended postconviction relief petition in March of 2002, again acting *pro se* and alleging he was denied effective assistance of counsel and a fair trial. The District Court appointed counsel for Swan and, noting that Swan's earlier

2

petition and amended petition were filed without the assistance of an attorney, ordered that newly-appointed counsel could file an amended petition if deemed necessary.

¶5 In December of 2002, Swan's counsel filed an amended petition for postconviction relief alleging as grounds for relief that

> Mr. Swan seeks post-conviction relief, in the form of a new trial, on the grounds that his original counsel rendered ineffective assistance of counsel when she failed to act on his request that she invoke his statutory right to an automatic substitution of judges, as provided by Mont. Code Ann. § 3-1-804, and when she openly opposed his motion to exercise his constitutional right to represent himself.

The District Court held a hearing and subsequently entered its opinion and order denying Swan's newly amended petition. Swan appeals.

## STANDARD OF REVIEW

¶6 We review a district court's denial of a postconviction relief petition to determine whether the court's findings of fact are clearly erroneous and its conclusions of law correct. *State v. Daniels*, 2005 MT 110, ¶ 7, 327 Mont. 78, ¶ 7, 111 P.3d 675, ¶ 7.

## DISCUSSION

¶7 Did the District Court err in denying Swan's amended petition for postconviction relief?

¶8 The District Court concluded Swan's ineffective assistance of counsel claim based on trial counsel's opposition to his motion to represent himself was barred by § 46-21-105(2), MCA, because the claim could have been raised in Swan's direct appeal. The court also concluded that Swan failed to establish prejudice with regard to counsel's alleged deficient

3

performance in failing to move to substitute the trial judge after he requested her to do so. Swan asserts error as to both conclusions.

¶9 Swan first argues the District Court erred in concluding that § 46-21-105(2), MCA, barred his claim that trial counsel rendered ineffective assistance by opposing his motion to represent himself. Section 46-21-105(2), MCA, provides that

> [w]hen a petitioner has been afforded the opportunity for a direct appeal of the petitioner's conviction, grounds for relief that were or could reasonably have been raised on direct appeal may not be raised, considered, or decided in a [postconviction relief] proceeding . . . .

As stated in *State v. White*, 2001 MT 149, ¶ 12, 306 Mont. 58, ¶ 12, 30 P.3d 340, ¶ 12,

> Where ineffective assistance of counsel claims are based on facts of record in the underlying case, they must be raised in the direct appeal and, conversely, where the allegations of ineffective assistance of counsel cannot be documented from the record in the underlying case, those claims must be raised by petition for postconviction relief.

¶10 Swan contends he could not have raised this ineffective assistance of counsel claim on direct appeal because the claim is dependent on facts not of record in the underlying criminal proceeding. We disagree.

¶11 The District Court appointed counsel for Swan in the criminal proceeding. Swan subsequently moved to dismiss his court-appointed counsel and sought permission to proceed *pro se*. The transcript of the hearing on Swan's motion reflects that the District Court first questioned Swan regarding his desire to represent himself, and then asked Swan's counsel to comment. Defense counsel responded that she did not support Swan's motion because she believed Swan was not capable of representing himself in the deliberate homicide case.

4

¶12 "[T]he definitive question that distinguishes and decides which [ineffective assistance] actions are record and which are non-record [based], is *why*? In other words, . . . does the record fully explain *why* counsel took the particular course of action?" *White*, ¶ 20. Swan claims that his trial counsel rendered ineffective assistance in opposing his motion to proceed *pro se* because her duty of loyalty required that she support his motion to represent himself. The transcript from the hearing on this motion clearly establishes that defense counsel opposed Swan's motion to represent himself and stated why. Consequently, we conclude Swan's claim of ineffective assistance of counsel in this regard is based on facts of record and could have been raised on direct appeal.

¶13 Swan also contends that § 46-21-105(2), MCA, does not bar this claim because he may argue that his appellate counsel was ineffective for failing to raise the issue in his direct appeal. Swan's argument, in its entirety, is as follows:

> Although [counsel's] open opposition to self-representation was contained in the record on direct review, this Court has held that unpreserved appellate issues can be raised in the context of a post-conviction relief petition that alleges ineffective assistance of appellate counsel. *See Hagen v. State*, 1999 MT 8, ¶¶ 40-41, 293 Mont. 60, ¶¶ 40-41, 973 P.2d 233, ¶¶ 40-41. Accordingly, the District Court erred when it concluded that Swan's postconviction argument was barred.

Swan's argument is without merit.

¶14 In *Hagen*, the petitioner set forth an ineffective assistance of appellate counsel claim. *See Hagen*, ¶ 6. Here, as stated above, the only grounds for relief alleged in Swan's newly amended petition for postconviction relief were that his trial counsel was ineffective for failing to move to substitute the District Court judge when he requested her to do so and

opposing his motion to proceed *pro se*. The petition did not raise ineffective assistance of appellate counsel as a basis for postconviction relief. We conclude, therefore, that the District Court did not err in determining Swan's claim that his trial counsel rendered ineffective assistance by opposing his motion to represent himself was barred by § 46-21-105(2), MCA.

¶15 Swan next asserts error with regard to the denial of his claim of ineffective assistance of counsel based on trial counsel's failure to move for an automatic substitution of the trial judge. This ineffective assistance claim was not record-based and, as a result, the District Court addressed the claim on its merits.

¶16 In analyzing claims of ineffective assistance of counsel, Montana courts apply a two-prong test which requires the defendant to establish that counsel's performance was deficient; the second prong requires the defendant to establish that the deficient performance prejudiced him or her. To satisfy the prejudice prong, the defendant must demonstrate a reasonable probability that, absent defense counsel's errors, the outcome of the prosecution would have been different. *See State v. Cobell*, 2004 MT 46, ¶ 14, 320 Mont. 122, ¶ 14, 86 P.3d 20, ¶ 14. Both prongs of the test must be met, and a court is not required to address both prongs where an insufficient showing has been made on one. *Cobell*, ¶ 15.

¶17 We have held that defense counsel's decision not to move for substitution of a trial judge may constitute ineffective assistance of counsel if the defendant establishes there is a reasonable probability that the outcome of the trial would have been different if counsel had moved for a substitute judge. *See Kills on Top v. State* (1995), 273 Mont. 32, 52, 901 P.2d

6

1368, 1381. In *Kills on Top*, we concluded prejudice had not been established. *Kills on Top*, 273 Mont. at 52, 901 P.2d at 1381. Swan does not contend that he has established the prejudice prong relating to this ineffective assistance of counsel claim. Therefore, *Kills on Top* is of no assistance to Swan here.

¶18 Swan argues, however, that trial counsel's failure to move to substitute the trial judge pursuant to § 3-1-804, MCA, after he requested her to do so constituted both deficient performance and structural error such that prejudice should be presumed. Because we reject Swan's "presumed prejudice" argument, we need not address the deficient performance prong of this ineffective assistance claim.

¶19 Since our decision in *Kills on Top*, we have clarified the distinction between structural error and trial error. *See State v. LaMere*, 2000 MT 45, 298 Mont. 358, 2 P.3d 204; *State v. Van Kirk*, 2001 MT 184, 306 Mont. 215, 32 P.3d 735. Trial error is error which typically occurs during the presentation of a case to the jury, is not presumptively prejudicial and, therefore, is subject to harmless error review. *Van Kirk*, ¶ 40. Structural error "is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire trial proceeding." *Van Kirk*, ¶ 38. Structural error affects the very framework within which a trial proceeds and is presumptively prejudicial, requiring automatic reversal. *Van Kirk*, ¶¶ 38-39.

¶20 Swan contends that his counsel's failure to move for substitution of the trial judge constitutes structural error because it occurred prior to the case being presented to the jury, was not evidentiary in nature and affected the very framework in which the trial proceeded. We disagree.

7

¶21    We observe at the outset that, while structural errors are those errors which typically occur prior to trial, not all pretrial error is deemed structural. We have held, for example, that a district court's error in denying a defendant his statutory right to plead guilty was trial error—notwithstanding that the error occurred prior to trial—because the error was not of constitutional dimensions and did not undermine the fairness of the trial proceeding. *State v. Peplow*, 2001 MT 253, ¶ 46, 307 Mont. 172, ¶ 46, 36 P.3d 922, ¶ 46. The defendant's right to plead guilty was conferred by statute, not guaranteed by the constitution. *Peplow*, ¶¶ 39 and 46.

¶22    In contrast, we determined in *LaMere* that the statutes governing procedures for the random selection of trial jurors secured a defendant's fundamental constitutional right to an impartial jury. *LaMere*, ¶ 38. Consequently, a material failure to substantially comply with those statutes was a constitutional error which was structural in nature. *See LaMere*, ¶¶ 39-50. In the present case, we conclude that defense counsel's failure to move for substitution of the trial judge under § 3-1-804, MCA, is more analogous to the error in *Peplow* because it was not an error of constitutional dimensions.

¶23    Section 3-1-804(1), MCA, provides that each adverse party in a civil or criminal case is entitled to one substitution of a district judge. As long as the motion for substitution is timely filed pursuant to § 3-1-804(1)(c), MCA, the moving party is not required to specify a reason for the requested substitution. Alternatively, § 3-1-805, MCA, provides that a party may move for the disqualification of a judge for cause by filing "an affidavit alleging facts

8

showing personal bias or prejudice of the presiding judge . . ." at any time prior to 30 days before the date of trial.

¶24    As Swan correctly observes, the lack of an impartial trial judge would be a constitutional error which is structural in nature and subject to automatic reversal. *See LaMere*, ¶ 23 (citation omitted). Section 3-1-805, MCA, secures the constitutional right to an impartial trial judge by providing procedures under which a defendant may disqualify a trial judge for bias or prejudice. In this sense, § 3-1-805, MCA, is akin to the jury procurement statutes at issue in *LaMere*. Section 3-1-804, MCA, on the other hand, confers a right to an automatic substitution of a trial judge for any reason. It is a right originally conferred by order of this Court and subsequently codified. *See In re the Rules on the Disqualification and Substitution of Judges* (1987), 227 Mont. 31. Thus, as was the right to plead guilty in *Peplow*, the right to substitute a judge—for any reason or no reason at all—is not of constitutional dimension.

¶25    As stated above, structural error "is typically of constitutional dimensions, precedes the trial, and undermines the fairness of the entire trial proceeding." *Van Kirk*, ¶ 38. These factors establishing structural error are stated in the conjunctive. In other words, if one of these factors is not established, the alleged error is not structural. Here, Swan has failed to establish that the alleged error is of constitutional dimension.

¶26    We conclude that Swan's counsel's failure to timely move for an automatic substitution of the trial judge under § 3-1-804, MCA, did not constitute structural error and is not presumed to be prejudicial. Furthermore, as stated above, Swan has not established—

9

and, indeed, does not contend—that his counsel's alleged deficient performance in this regard prejudiced him. As a result, we conclude that the District Court did not err in denying Swan's ineffective assistance of counsel claim on this basis.

¶27   We hold that the District Court did not err in denying Swan's amended petition for postconviction relief.

¶28   Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ PATRICIA COTTER
/S/ JOHN WARNER
/S/ JIM RICE

Justice W. William Leaphart dissenting.

¶29    The Court reaches a result that is inconsistent with our precedent concerning peremptory challenges to jurors. In addition, the Court has, without explanation, elevated an erstwhile "typical" trait of structural error to the lofty status of a requisite component of structural error.

¶30    If an error is structural, a defendant need not show prejudice since prejudice is presumed. The Court here, however, concludes that Swan must, pursuant to *Strickland*, establish that his attorney's "failure to move for substitution of the trial judge under § 3-1-804, MCA," prejudiced him "because it was not an error of constitutional dimensions." ¶ 22. The Court distinguishes § 3-1-804, MCA, which affords either party an opportunity to automatically obtain a substitute trial judge, from § 3-1-805, MCA, which allows a party to move for the disqualification of a trial judge for cause. The Court acknowledges that the lack of an impartial trial judge constitutes a constitutional error which rises to the level of a structural error, requiring automatic reversal. *LaMere*, ¶ 23 (citing *Tumey v. Ohio* (1927), 273 U.S. 510, 47 S.Ct. 437, 71 L.Ed. 749). In concluding that the right to automatically substitute a trial judge "is not of constitutional dimension," ¶ 24, the Court necessarily, albeit implicitly, proposes that the availability or deprivation of this right has no bearing on the impartiality of the trial judge. Our prior holdings regarding a defendant's right to peremptorily challenge jurors, however, undermine this proposition.

¶31    We have held that structural error occurs if:

(1) a district court abuses its discretion by denying a challenge for cause to a prospective juror;
(2) the defendant uses one of his or her peremptory challenges to remove the disputed juror; and
(3) the defendant exhausts all of his or her peremptory challenges.

*State v. Good*, 2002 MT 59, ¶ 62, 309 Mont. 113, ¶ 62, 43 P.3d 948, ¶ 62; *State v. Freshment*, 2002 MT 61, ¶ 14, 309 Mont. 154, ¶ 14, 43 P.3d 968, ¶ 14.  We reasoned that this effectively deprives the defendant of the right to exercise all of his or her peremptory challenges and concluded that "[w]hen the State has more peremptory challenges than the accused, the State has an unmistakable tactical advantage and *the impartiality of the jury is compromised*. Errors which affect the impartiality of the jury are, by definition, structural and require reversal." *Good*, ¶ 65 (emphasis added).

¶32    A jury's impartiality is compromised whenever the State retains an opportunity— which the defendant is effectively denied—to automatically exclude a juror by exercising a peremptory challenge.  This imbalance between the number of peremptory challenges compromises the jury's impartiality in a manner that is impossible to quantify.  The impartiality of a judge is likewise compromised when the State, but not the defendant, is afforded the opportunity to automatically substitute a trial judge.  The defendant alone is thus denied a means by which to ensure the judge's neutrality.  Here, the inaction of Swan's counsel effectively deprived him of his statutory right to automatically substitute the trial judge, yet the State retained its right to do the same if it felt in any way disadvantaged by the judge's participation in the trial.  This disparity compromises the impartiality of the judge just as a discrepancy in the number of peremptory challenges available to each party

12

compromises the impartiality of a jury. Accordingly, it constitutes error that is both constitutional and structural and excuses Swan from having to establish prejudice.

¶33 Finally, I disagree with the Court that a structural error must be an error "of constitutional dimensions." The Court correctly notes that a structural error "is *typically* of constitutional dimensions," *Van Kirk,* ¶ 38 (emphasis added), and then concludes that because "Swan has failed to establish that the alleged error is of constitutional dimension," "the alleged error is not structural." ¶ 25. The Court fails to explain why it has interpreted "typically" to mean "always." This strained interpretation allows the Court to affirm denial of Swan's petition without further substantive analysis. Regardless, I would hold that the shadow of partiality cast on the proceedings by Swan's inability to exercise his right to automatically substitute the judge constitutes structural error.

¶34 I dissent.

/S/ W. WILLIAM LEAPHART