05-484

# IN THE SUPREME COURT OF THE STATE OF MONTANA

## 2007 MT 164

STATE OF MONTANA,

        Plaintiff and Respondent,

  v.

RONALD WAYNE VAUGHN,

        Defendant and Appellant.


APPEAL FROM:   District Court of the Eighteenth Judicial District,
                      In and For the County of Gallatin, Cause No. DC-2004-72
                      Honorable Mike Salvagni, Presiding Judge


COUNSEL OF RECORD:

        For Appellant:

                Jack H. Morris; Jardine & Morris, Whitehall, Montana

        For Respondent:

                The Honorable Mike McGrath, Attorney General; Tammy Plubell,
                Assistant Attorney General, Helena, Montana

                Marty Lambert, Gallatin County Attorney; Eric N. Kitzmiller,
                Deputy County Attorney, Bozeman, Montana


                          Submitted on Briefs:  January 4, 2007
                                    Decided:  July 10, 2007


Filed:

               _____
                            Clerk

Chief Justice Karla M. Gray delivered the Opinion of the Court.

¶1     Ronald Wayne Vaughn (Vaughn) appeals from the judgment entered by the Eighteenth Judicial District Court, Gallatin County, on his convictions and sentences for driving under the influence of alcohol (DUI), a felony, in violation of § 61-8-401, MCA, and driving with a suspended or revoked license, a misdemeanor, in violation of § 61-5-212, MCA.  We affirm.

¶2     Vaughn raises the following issues on appeal:

¶3     1.  Did the District Court err in denying Vaughn's motion to suppress evidence?

¶4     2.  Did the District Court abuse its discretion in denying Vaughn's motion for a new trial based on his claim that he received ineffective assistance of counsel?

¶5     3.  Did the District Court err in sentencing Vaughn as a persistent felony offender?

## BACKGROUND

¶6     At approximately 1:30 a.m. on February 17, 2004, Gallatin County Sheriff's Deputy James Phillips (Phillips) was on patrol driving southbound on Jackrabbit Lane in Gallatin County, Montana, when he received information from dispatch regarding a possible intoxicated driver.  According to the dispatcher, a convenience store clerk had telephoned 9-1-1 to report that an apparently intoxicated man had purchased a can of beer from the store, entered a vehicle and drove away.  The clerk reported that the man was driving a silver-colored Subaru WRX with no rear license plate and was headed northbound on Jackrabbit Lane.

¶7     At about the same time he received this dispatch report, Phillips observed a silver Subaru approaching his patrol vehicle on Jackrabbit Lane.  As the two vehicles passed,

2

Phillips observed the Subaru was slowing down and pulling to the side of the highway. Phillips then observed in his rearview mirror that the Subaru had stopped and was parked straddling the fog line with half the vehicle on the shoulder of the highway and half the vehicle in the northbound lane of travel. Phillips turned his patrol vehicle around, parked approximately 25 feet behind the Subaru and activated his vehicle's rear amber flashing lights to warn approaching drivers of the two vehicles' location. Phillips then approached the Subaru on foot and made contact with the driver, who eventually was identified as Vaughn. The situation culminated in Phillips arresting Vaughn for DUI.

¶8 On February 25, 2004, the State of Montana (State) charged Vaughn by information with the offenses of DUI and driving with a suspended or revoked license. Based on information that Vaughn had seven prior DUI convictions, the State charged the DUI offense as a felony. On that same day, the State filed notice of its intent to seek a persistent felony offender designation based on Vaughn's conviction for felony DUI in April of 2002. The District Court subsequently appointed William A. Bartlett (Bartlett) to represent Vaughn in the proceedings.

¶9 The defense filed several pretrial motions, including a motion to suppress evidence and a motion to strike the State's notice of intent to seek persistent felony offender designation. In his motion to suppress, Vaughn asserted that all evidence obtained after Phillips stopped behind Vaughn's vehicle must be suppressed because Phillips did not have sufficient particularized suspicion to conduct an investigatory stop and Phillips' actions were not justified as a welfare check under the community caretaker doctrine. In his motion to strike the persistent felony offender notice, Vaughn argued that his 2002

3

DUI conviction could not be used as a predicate felony conviction for purposes of a persistent felony offender designation because the DUI sentencing statute in effect at that time did not authorize imposition of a term of imprisonment in excess of one year. The District Court held an evidentiary hearing and subsequently denied Vaughn's motions to suppress and to strike the persistent felony offender notice.

¶10 The case proceeded to a jury trial. On the morning of trial, Vaughn pled guilty to the misdemeanor driving with a suspended or revoked license charge. The jury later found Vaughn guilty of the DUI charge. The District Court scheduled a sentencing hearing and ordered preparation of a presentence investigation report.

¶11 Vaughn subsequently began sending the District Court letters on his own behalf raising several concerns regarding the conduct of the trial and Bartlett's actions in representing him. As a result, Bartlett moved for—and the District Court granted—leave to withdraw as Vaughn's counsel. Vaughn then filed a motion for a new trial, asserting in part that he received ineffective assistance of counsel during both the pretrial and trial phases of the proceedings. The District Court eventually appointed Jack H. Morris to represent Vaughn in the post-trial proceedings and scheduled an evidentiary hearing on Vaughn's motion for a new trial. After the hearing, the District Court denied Vaughn's motion.

¶12 The District Court then held a sentencing hearing and sentenced Vaughn as a persistent felony offender to a 50-year term at the Montana State Prison and a concurrent 6-month term in the Gallatin County Detention Center for the offense of driving with a suspended or revoked license. Vaughn appeals his convictions and sentences.

4

¶13    *1. Did the District Court err in denying Vaughn's motion to suppress evidence?*

¶14    Vaughn moved the District Court to suppress all evidence obtained after Phillips stopped behind Vaughn's vehicle because Phillips did not have sufficient particularized suspicion to conduct an investigatory stop and no other justification existed for the stop. The State responded, in part, by arguing that Phillips' conduct in approaching Vaughn's vehicle was justified as a welfare check under the community caretaker doctrine, which then ripened into a DUI investigation. The District Court held an evidentiary hearing on the motion to suppress at which Phillips was the only witness to testify. Following the hearing, the District Court entered its findings of fact, conclusions of law and order denying the motion to suppress. Vaughn asserts error.

¶15    We review a district court's ruling on a criminal defendant's motion to suppress evidence to determine whether the court's findings of fact are clearly erroneous and whether the court correctly applied those findings as a matter of law. *State v. Wheeler*, 2006 MT 38, ¶ 12, 331 Mont. 179, ¶ 12, 134 P.3d 38, ¶ 12. "A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed." *Wheeler*, ¶ 12.

¶16    In its order denying Vaughn's motion to suppress, the District Court made findings of fact based on Phillips' testimony. Specifically, the court found that at approximately 1:30 a.m. on February 17, 2004, Phillips was on patrol traveling southbound on Jackrabbit Lane when he received a report from dispatch regarding a

5

possible drunk driver. The report indicated the alleged drunk driver was traveling northbound on Jackrabbit Lane in a Subaru WRX. As Phillips was receiving this dispatch report, he observed a silver Subaru traveling toward him, but was unable to determine whether the vehicle was the same vehicle as described in the report. As the Subaru passed Phillips' patrol vehicle, Phillips observed the Subaru begin to pull over to the side of the highway. Phillips then observed in his rearview mirror that the Subaru had stopped on the side of the highway, with half the vehicle on the shoulder of the highway and half still in the northbound lane of travel. Phillips believed the driver of the vehicle might be in need of assistance. Consequently, Phillips turned his patrol car around, parked behind the Subaru, approached the vehicle on foot, identified himself as a peace officer and inquired as to the driver's welfare.

¶17 The only challenge Vaughn raises regarding this initial portion of the District Court's findings of fact is his contention that the court's finding that Phillips observed the Subaru stop on the highway half on the shoulder and half in the lane of travel is clearly erroneous. In support of this contention, Vaughn asserts that, had he testified at the suppression hearing, he would have stated that he had pulled his vehicle completely off the highway when he stopped and no portion of his vehicle was in the lane of travel. The obvious—and fatal—flaw in this argument is that Vaughn did not testify at the suppression hearing. As a result, the only evidence before the District Court was Phillips' testimony that the Subaru was half on the shoulder of the highway and half in the lane of travel. Thus, the District Court's finding of fact in this regard is supported by

6

substantial credible evidence of record and is not otherwise clearly erroneous. *See Wheeler*, ¶ 12.

¶18 Based on the above stated findings, the District Court concluded that Phillips' conduct in stopping behind and approaching the Subaru was justified as a welfare check under the community caretaker doctrine. We first adopted the community caretaker doctrine in *State v. Lovegren*, 2002 MT 153, 310 Mont. 358, 51 P.3d 471. In that case, we observed that "[n]ot all contact between police officers and citizens involves the 'seizure' of a person under the Fourth Amendment," and certain police-citizen encounters simply are a result of law enforcement's public safety—or "community caretaker"—function. *Lovegren*, ¶¶ 13 and 16. We then adopted a three-part test which must be applied in analyzing a stop under the community caretaker function as follows:

> First, as long as there are objective, specific and articulable facts from which an experienced officer would suspect that a citizen is in need of help or is in peril, then that officer has the right to stop and investigate. Second, if the citizen is in need of aid, then the officer may take appropriate action to render assistance or mitigate the peril. Third, once, however, the officer is assured that the citizen is not in peril or is no longer in need of assistance or that the peril has been mitigated, then any actions beyond that constitute a seizure implicating not only the protections provided by the Fourth Amendment, but more importantly, those greater guarantees afforded under Article II, Sections 10 and 11 of the Montana Constitution as interpreted in this Court's decisions.

*Lovegren*, ¶ 25.

¶19 With regard to Phillips' initial stop behind and approach of the Subaru, the District Court concluded that, based on Phillips' concern about whether the driver of the vehicle might need assistance and the location of the Subaru being a potential hazard to the driver and other motorists, "Phillips was justified and obligated to stop and mitigate the danger

7

to any occupants of the stopped vehicle or other motorists traveling on Jackrabbit Lane." In other words, the District Court determined that Phillips had objective, specific and articulable facts from which to infer that a citizen might be in need of help and which justified his initial stop under the first prong of the *Lovegren* community caretaker test. Vaughn does not challenge the District Court's conclusion in this regard. Furthermore, the second prong of the *Lovegren* test is not applicable here because Vaughn was not in need of assistance and no "peril" required mitigation, given the circumstances and our discussion below.

¶20  With regard to the third prong of the *Lovegren* test, the District Court made additional findings of fact based on Phillips' testimony and the audiotape of the encounter recorded by Phillips' body wire. It found that, when Phillips arrived at the passenger side of the Subaru, the driver—later identified as Vaughn—immediately stated that he had stopped to change a compact disc in the stereo and inquired if that was the reason Phillips had stopped. Phillips responded that he had stopped to make sure Vaughn was all right.

¶21  Vaughn contends that, once he informed Phillips he was not in need of assistance, the scope of the community caretaker stop ended. Thus, according to Vaughn, under the third prong of the *Lovegren* test, Phillips' request for Vaughn's driver's license, proof of insurance and vehicle registration, as well as his subsequent request that Vaughn perform field sobriety tests, constituted a seizure under the United States and Montana Constitutions. Vaughn further argues on this basis that, because Phillips had no other

8

justification for the stop, this seizure was unlawful and requires suppression of all evidence gathered thereafter. We disagree.

¶22 We recognized in *Lovegren* that, where a law enforcement officer's initial contact with a citizen is justified under the community caretaker doctrine, additional observations made by that officer during the encounter may result in a particularized suspicion of wrongdoing, thus escalating the encounter into an investigation of a possible offense such as DUI. *Lovegren*, ¶ 27; s*ee also Wheeler*, ¶ 26; *State v. Litschauer*, 2005 MT 331, ¶ 10, 330 Mont. 22, ¶ 10, 126 P.3d 456, ¶ 10; *State v. Seaman*, 2005 MT 307, ¶ 30, 329 Mont. 429, ¶ 30, 124 P.3d 1137, ¶ 30; *State v. Nelson*, 2004 MT 13, ¶ 9, 319 Mont. 250, ¶ 9, 84 P.3d 25, ¶ 9. It is well-established that particularized suspicion justifying such further investigation must be supported by specific and articulable facts which, taken together with rational inferences from those facts, reasonably warrant a law enforcement officer's belief that an offense is being or has been committed. *See, e.g., State v. Reiner*, 2003 MT 243, ¶ 15, 317 Mont. 304, ¶ 15, 77 P.3d 210, ¶ 15.

¶23 Phillips testified at the suppression hearing that, as he approached Vaughn's vehicle on foot, he looked through the window and observed an opened can of beer sitting between the two front seats. Phillips further testified that, while he informed Vaughn why he approached the Subaru and Vaughn responded, Phillips observed that Vaughn's speech was slurred and his eyes were bloodshot and watery. Phillips testified that, at that point, he was concerned that he might be dealing with an intoxicated driver. We conclude, as did the District Court, that Phillips' observations as he approached the Subaru and made initial contact with Vaughn were sufficient to establish a particularized

9

suspicion that Vaughn may have been DUI, thus justifying a further investigation once the purpose of the initial stop had been accomplished.

¶24   We conclude that Vaughn has failed to establish that the District Court's findings of fact were erroneous or that the court incorrectly applied its findings as a matter of law. We hold, therefore, that the District Court did not err in denying Vaughn's motion to suppress evidence.

¶25   *2. Did the District Court abuse its discretion in denying Vaughn's motion for a new trial based on his claim that he received ineffective assistance of counsel?*

¶26   Following the jury trial in this case, Bartlett moved for—and the District Court granted—leave to withdraw as Vaughn's counsel. Vaughn then moved the District Court for a new trial, contending Bartlett rendered ineffective assistance of counsel during the pretrial and trial phases of the proceedings. Vaughn asserted Bartlett was ineffective by failing to adequately investigate the case and interview witnesses—namely, Phillips and the tow truck driver who was called by law enforcement to remove Vaughn's vehicle from the scene after his arrest—prior to the suppression hearing. Additionally, Vaughn asserted Bartlett was ineffective by failing to call the tow truck driver, Vaughn, and Vaughn's father as witnesses at the suppression hearing and at trial.

¶27   The District Court held an evidentiary hearing on Vaughn's motion for a new trial at which Bartlett, Vaughn, Vaughn's father and an investigator retained by Vaughn post-trial, all testified. Based on the testimony presented, the District Court entered its findings of fact, conclusions of law and order determining that Vaughn had failed to establish Bartlett's performance was deficient in any of the asserted respects and denying Vaughn's motion for a new trial on that basis. Vaughn asserts error.

10

¶28    We review a district court's denial of a criminal defendant's motion for a new trial to determine whether the court abused its discretion.  *State v. Trull*, 2006 MT 119, ¶ 8, 332 Mont. 233, ¶ 8, 136 P.3d 551, ¶ 8.   However, Vaughn's underlying claim of ineffective assistance of counsel presents a mixed question of law and fact which we review *de novo*.  *Trull*, ¶ 9.  Furthermore, notwithstanding our *de novo* review of an ineffective assistance of counsel claim, we still give deference to a district court's determination of witness credibility as the trier of fact at an evidentiary hearing on such a claim.  *Hendricks v. State*, 2006 MT 22, ¶ 16, 331 Mont. 47, ¶ 16, 128 P.3d 1017, ¶ 16.

¶29    A defendant claiming ineffective assistance of counsel is first required to establish that counsel's performance was deficient.  *Swan v. State*, 2006 MT 39, ¶ 16, 331 Mont. 188, ¶ 16, 130 P.3d 606, ¶ 16.  "Judicial scrutiny of counsel's performance must be highly deferential and courts must indulge a strong presumption that counsel's actions regarding defense strategies fall within the wide range of reasonable and sound professional assistance."  *State v. Thee*, 2001 MT 294, ¶ 8, 307 Mont. 450, ¶ 8, 37 P.3d 741, ¶ 8 (citing *Strickland v. Washington*, 466 U.S. 668, 688-89, 104 S.Ct. 2052, 2064-65 (1984)).  A defendant seeking to establish that counsel's performance was deficient must show that counsel's challenged actions stemmed from ignorance or neglect, rather than from professional deliberation.  *Thee*, ¶ 8 (citation omitted).  Thus, courts give counsel's strategic decisions great deference and such strategic decisions cannot form the basis upon which to find ineffective assistance of counsel.  *Thee*, ¶ 8 (citation omitted).

¶30    Moreover, if deficient performance is established, the defendant must establish that the deficient performance prejudiced the defendant.  *See Swan*, ¶ 16; *Thee*, ¶ 9.  Both

11

the deficient performance and prejudice prongs of the ineffective assistance of counsel test must be met and a court is not required to address both prongs where a defendant makes an insufficient showing on one. *Swan*, ¶ 16.

¶31 Vaughn first argues that Bartlett rendered ineffective assistance of counsel by failing to interview the arresting officer, Phillips, prior to either the hearing on the motion to suppress or the trial. We have held that defense counsel has a duty to investigate and interview witnesses who may have knowledge of the case, and counsel's complete failure to do so constitutes deficient performance. *State v. Denny*, 262 Mont. 248, 253, 865 P.2d 226, 229 (1993). That is not to say, however, that *every* failure to interview a witness constitutes deficient performance. As stated above, a defendant must show that counsel's challenged actions stemmed from ignorance or neglect, rather than from professional deliberation. *Thee*, ¶ 8. Defense counsel has a duty to either conduct reasonable investigations or make a reasonable decision that particular investigations are unnecessary, and we evaluate counsel's decision not to investigate for reasonableness in light of all the circumstances of the case, applying great deference to counsel's judgments. *State v. Thomas*, 285 Mont. 112, 119, 946 P.2d 140, 144 (1997) (citing *Strickland*, 466 U.S. at 691, 104 S.Ct. at 2066); *Weaver v. State*, 2005 MT 158, ¶ 17, 327 Mont. 441, ¶ 17, 114 P.3d 1039, ¶ 17. Furthermore, while a defendant's claim that defense counsel failed to interview a witness may sound impressive in theory, such a claim cannot establish ineffective assistance when the witness's account of the circumstances otherwise is fairly known to counsel. *Thomas*, 285 Mont. at 119, 946 P.2d

12

at 144 (citing *United States v. Decoster*, 624 F.2d 196, 209 (D.C. Cir. 1976)); *Weaver*, ¶ 16.

¶32 At the hearing on Vaughn's motion for a new trial, Bartlett testified that he reviewed Phillips' written report regarding the stop and arrest, and listened to the audiotape of the encounter recorded by Phillips' body wire, prior to the suppression hearing. Bartlett further testified that he believed the audiotape constituted the best evidence of the events because it was a live recording of the statements made by both Vaughn and Phillips during the encounter. Bartlett determined that, between the written report and the audiotape, he had "a pretty good idea" of what Phillips' testimony would be at the suppression hearing and was prepared with a strategy for challenging Phillips' stop as not justified under the community caretaker doctrine or any other theory. Thus, Bartlett made a deliberate decision not to interview Phillips and the absence of an interview was not a result of ignorance or neglect. Bartlett investigated Phillips' written report and the audiotape, and then determined under the circumstances that further investigation via an interview was unnecessary. In light of the great deference given defense counsel's judgment on these matters, we conclude Bartlett's decision not to interview Phillips was reasonable. As a result, we further conclude that Vaughn has not established that Bartlett's failure to personally interview Phillips constituted deficient performance.

¶33 Vaughn also argues that Bartlett rendered ineffective assistance of counsel by failing to locate the tow truck driver and call him as a witness at the suppression hearing. Vaughn asserts that the tow truck driver's testimony was highly important because the

driver could have contradicted Phillips' testimony that Vaughn's vehicle was stopped halfway in the highway's lane of travel, thus providing support for Vaughn's theory that the welfare check was unnecessary. At the hearing on Vaughn's motion for a new trial, Bartlett testified that his paralegal attempted to contact the tow truck driver on at least four occasions to interview him regarding his recollection of the location of Vaughn's vehicle in reference to the highway, but was unable to do so. We will not determine that trial counsel's performance is deficient where he or she makes a reasonable effort to locate a witness, but is unable to do so. *Williams v. State*, 2002 MT 189, ¶ 18, 311 Mont. 108, ¶ 18, 53 P.3d 864, ¶ 18. Here, Bartlett—via his paralegal—made reasonable efforts to contact the tow truck driver and ascertain whether the driver's recollection would—or would not—contradict Phillips' testimony. We conclude that Bartlett's failure to locate the potential witness did not constitute deficient performance.

¶34 Vaughn next contends that Bartlett provided ineffective assistance of counsel by failing to call Vaughn's father to testify at the suppression hearing. Vaughn's father testified at the hearing on Vaughn's motion for a new trial that Vaughn called him on a cell phone after Vaughn had stopped and told him that he was pulled over on the side of the road. Vaughn asserts that Bartlett should have called his father as a witness at the suppression hearing to testify to this conversation and provide evidence contradicting Phillips' testimony that Vaughn was stopped halfway in the highway lane of travel.

¶35 In this regard, it is critical to note other testimony at the hearing on Vaughn's motion. Vaughn's father testified on cross-examination that he did not personally observe the location of Vaughn's vehicle on the road and knew only what Vaughn had

14

told him. Bartlett testified at the hearing on the motion for a new trial that, although Vaughn had informed him of this telephone conversation with his father, Bartlett determined the father's testimony would be hearsay and, therefore, inadmissible. The District Court agreed with Bartlett that the testimony would have been inadmissible hearsay.

¶36 Hearsay is defined as "a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." M. R. Evid. 801(c). Thus, any testimony from Vaughn's father regarding Vaughn's statement to him that Vaughn had pulled his vehicle completely off the highway, offered to prove the truth of where Vaughn's vehicle was located, would be hearsay. Hearsay generally is not admissible. M. R. Evid. 802. Moreover, trial counsel is not ineffective in failing to offer inadmissible evidence or testimony. *See State v. Hildreth*, 267 Mont. 423, 432, 884 P.2d 771, 777 (1994). We conclude that Bartlett's failure to call Vaughn's father to testify regarding the cell phone call did not constitute deficient performance.

¶37 Vaughn also argues that Bartlett's failure to call Vaughn himself to testify at either the suppression hearing or the trial constituted ineffective assistance of counsel. Vaughn testified at the hearing on his motion for a new trial that he wished to testify at the suppression hearing and trial in order to present his version of the events that transpired during the stop which led to his arrest. Contrary to Vaughn's testimony, Bartlett testified that, in his pretrial discussions with Vaughn, Vaughn was adamant that he did not want to testify at either the suppression hearing or trial.

15

¶38    In its findings of fact, conclusions of law and order denying Vaughn's motion for a new trial, the District Court found that "Vaughn advised Bartlett that he did not want to be a witness and did not want to testify at the pretrial hearing." This finding is supported by substantial evidence. Furthermore, the District Court having heard testimony from—and observed the demeanor of—both Vaughn and Bartlett, implicitly determined Bartlett was more credible. As stated above, we give deference to a district court's determination of witness credibility as the trier of fact at an evidentiary hearing on an ineffective assistance of counsel claim. *Hendricks*, ¶ 16. We conclude, therefore, that Bartlett's performance was not deficient in failing to call Vaughn to testify.

¶39    Finally, Vaughn contends that Bartlett rendered ineffective assistance of counsel because he "did no independent investigation of the scene of the stop, and made no attempt to establish facts as to whether or not Vaughn's vehicle was blocking traffic." Bartlett testified at the hearing on Vaughn's motion for a new trial that he met with Vaughn several times to discuss the case and obtain Vaughn's version of what occurred on the night of his arrest, and followed up on those conversations. During the meetings Vaughn told Bartlett that, when he pulled off the highway that night, he had pulled his vehicle completely off the highway and, indeed, had turned off onto a gravel road. Following his discussions with Vaughn, Bartlett went to the area where the stop occurred to investigate the location and verify Vaughn's description of where his vehicle was when Phillips approached it. Bartlett photographed the area, but could not find the gravel road which Vaughn had described to him. Additionally, Bartlett reviewed Phillips' written report regarding the stop and the audiotape recorded by Phillips' body wire.

16

Bartlett also attempted several times to contact the tow truck driver to verify the location of Vaughn's vehicle on the night in question, although he ultimately was unable to do so. Thus, contrary to Vaughn's assertion that Bartlett "did no independent investigation of the scene of the stop, and made no attempt to establish facts . . . ," Bartlett did conduct an independent investigation into the facts of the case. We conclude that Vaughn has failed to establish that Bartlett's performance was deficient in this respect.

¶40 We conclude Vaughn has failed to establish that Bartlett's performance was deficient with regard to any of Vaughn's asserted claims. As stated above, a defendant claiming ineffective assistance of counsel must establish both that counsel's performance was deficient and that the deficient performance prejudiced the defendant. *Swan*, ¶ 16. Because Vaughn has failed to establish the deficient performance prong of the ineffective assistance of counsel test, we need not address the prejudice prong. *Swan*, ¶ 16. We further conclude, therefore, that Vaughn has failed to establish that Bartlett rendered ineffective assistance of counsel.

¶41 We hold that the District Court did not abuse its discretion in denying Vaughn's motion for a new trial based on claims of ineffective assistance of counsel.

¶42 *3. Did the District Court err in sentencing Vaughn as a persistent felony offender?*

¶43 Vaughn presents three arguments in support of his contention that the District Court erred in sentencing him pursuant to the persistent felony offender provisions found in §§ 46-18-501 and -502, MCA. First, Vaughn relies on *Blakely v. Washington*, 542 U.S. 296, 124 S.Ct. 2531 (2004), in asserting the District Court made findings of fact in support of its sentence which violated his right to trial by jury. Second, Vaughn asserts

that, due to a conflict between two sentencing statutes, the court could only sentence him to a maximum term of five years, all of which must be suspended. Third, Vaughn asserts that using a prior DUI conviction both to enhance his current DUI offense to a felony and to support a persistent felony offender designation constitutes double jeopardy.

¶44 The State initially contends that we should not address Vaughn's sentence-related arguments because he failed to raise them in the District Court. We generally will not address arguments and new legal theories raised for the first time on appeal, because it is unfair to fault a trial court for failing to rule correctly on an issue which it was never given the opportunity to address. *State v. Mallak*, 2005 MT 49, ¶ 31, 326 Mont. 165, ¶ 31, 109 P.3d 209, ¶ 31.

¶45 In his pretrial motion to strike the State's notice of intent to seek persistent felony offender designation, Vaughn's only argument was that neither his 2002 DUI conviction nor his current DUI offense could be considered felonies for purposes of the persistent felony offender statutes because the sentencing statute for fourth or subsequent DUI convictions in effect at the time he committed the two offenses did not authorize imposition of a term of imprisonment in excess of one year. The District Court rejected Vaughn's argument in this regard and denied his motion to strike. Vaughn does not challenge the District Court's denial of his motion to strike.

¶46 The only other action Vaughn took regarding the persistent felony offender designation and sentence in the underlying proceeding was to read aloud a written statement at the sentencing hearing in which he generally asserted that his persistent felony offender status must be determined by a jury and that the State's sentencing

18

recommendation was disproportionate to sentences received by other defendants. Vaughn's statement did not challenge the persistent felony offender statutes as being in conflict with the DUI sentencing statutes or in violation of his constitutional right not to be placed in double jeopardy. Thus, we conclude that Vaughn's second and third arguments in support of his contention that the District Court erred in sentencing him as a persistent felony offender were not raised in the trial court and we decline to address them.

¶47    We conclude, however, that although Vaughn's written statement did not cite *Blakely* as authority, he did generally assert that his status as a persistent felony offender must be determined by a jury. Consequently, his first argument was sufficiently preserved for consideration of the issue on appeal.

¶48    Vaughn relies on *Blakely* for the proposition that factual findings which serve to enhance a defendant's sentence beyond the prescribed statutory maximum for the offense must be determined by a jury beyond a reasonable doubt. *Blakely*, 542 U.S. at 301, 124 S.Ct. at 2536 (citing *Apprendi v. New Jersey*, 530 U.S. 466, 490, 120 S.Ct. 2348, 2362-63 (2000)). Vaughn then asserts that the District Court's imposition of a sentence of 50 years as a persistent felony offender under § 46-18-502, MCA, served to enhance his sentence beyond the statutory maximum of a 13-month commitment to the Department of Corrections followed by a suspended sentence of up to 5 years authorized for the felony DUI offense under § 61-8-731, MCA. Thus, according to Vaughn, his sentence as a persistent felony offender should have been determined by a jury.

¶49 We first observe that the United States Supreme Court's full statement in this regard was that "'*[o]ther than the fact of a prior conviction*, any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be submitted to a jury, and proved beyond a reasonable doubt.'" *Blakely*, 542 U.S. at 301, 124 S.Ct. at 2536 (quoting *Apprendi*, 530 U.S. at 490, 120 S.Ct. at 2362-63) (emphasis added). Section 46-18-501, MCA, provides as follows:

> A "persistent felony offender" is an offender who has previously been convicted of a felony and who is presently being sentenced for a second felony committed on a different occasion than the first. An offender is considered to have been previously convicted of a felony if:
>    (1) the previous felony conviction was for an offense committed in this state or any other jurisdiction for which a sentence to a term of imprisonment in excess of 1 year could have been imposed;
>    (2) less than 5 years have elapsed between the commission of the present offense and either:
>    (a) the previous felony conviction; or
>    (b) the offender's release on parole or otherwise from prison or other commitment imposed as a result of the previous felony conviction; and
>    (3) the offender has not been pardoned on the ground of innocence and the conviction has not been set aside in a postconviction hearing.

¶50 Pursuant to the statute, the operative facts pursuant to which a defendant may be found to be a persistent felony offender are that the defendant was convicted of or released from commitment for a previous felony offense—which has not been set aside or pardoned—within five years of when the defendant committed the felony offense for which he or she currently is being sentenced. In other words, it is the fact of the defendant's prior felony conviction which authorizes an enhanced sentence under Montana's persistent felony offender statutes. Here, the District Court enhanced Vaughn's felony DUI sentence under the persistent felony offender statutes based on its

20

finding that Vaughn had a prior felony DUI conviction in April of 2002. Under the Supreme Court's above-quoted statements in *Blakely* and *Apprendi*, this factual determination properly may be made by the sentencing court, rather than a jury. Indeed, Vaughn does not challenge the District Court's finding in this regard on appeal.

¶51 Rather, Vaughn challenges the facts found by the District Court in its oral and written statements outlining the court's reasons for imposing the 50-year sentence, which included Vaughn's extensive criminal history going back nearly 21 years, including multiple DUI and felony convictions; his repeated failure to remain law-abiding when released on community supervision; his long history of chemical dependency and his lack of success in rehabilitative efforts; his lack of motivation to change his behavior; and the need to protect society from his repetitive criminal behavior. In that regard, the Supreme Court in *Apprendi* discussed the distinction between factual findings which increase the potential punishment of a defendant beyond the statutory maximum for the offense— which generally must be determined by a jury beyond a reasonable doubt—and factual findings which are "sentencing factors" properly determined by the sentencing court. The Supreme Court noted that the term "sentencing factor" describes those aggravating or mitigating circumstances that support imposition of a sentence within the range authorized for the offense. *Apprendi*, 530 U.S. at 494, 120 S.Ct. at 2365 n. 19.

¶52 Here, Vaughn does not dispute that the District Court properly found that his 2002 felony DUI conviction rendered him a persistent felony offender pursuant to § 46-18-501, MCA, thus subjecting Vaughn to an enhanced sentence for his felony DUI conviction. Pursuant to § 46-18-502(1), MCA, Vaughn was then subject to a term of imprisonment of

21

not less than 5 years or more than 100 years. The District Court's ultimate sentence of 50 years in the Montana State Prison was within the prescribed statutory maximum sentence. The District Court's stated findings regarding Vaughn's criminal history—multiple prior convictions, failure to comply with community supervision, long history of chemical dependency, lack of motivation to change his behavior and the need to protect society from his repetitive criminal behavior—provided the court's reasoning for imposing the 50-year prison term and were appropriately considered by the court as sentencing factors.

¶53 We conclude that Vaughn's right to trial by jury was not violated by the District Court's findings of fact in support of its sentencing Vaughn to a 50-year term in the Montana State Prison. As a result, we hold that the District Court did not err in sentencing Vaughn as a persistent felony offender.

¶54 Affirmed.

/S/ KARLA M. GRAY

We concur:

/S/ W. WILLIAM LEAPHART
/S/ PATRICIA COTTER
/S/ JAMES C. NELSON
/S/ JOHN WARNER