DA 07-0295 and DA 07-0296

IN THE SUPREME COURT OF THE STATE OF MONTANA

2008 MT 21N

IN THE MATTER OF

M.L and A.T.,

     Youths In Need of Care.

APPEAL FROM:    District Court of the Second Judicial District,
In and For the County of Silver Bow, Cause Nos. DN 2006-013
and DN 2006-012 BN
Honorable Brad Newman, Presiding Judge

COUNSEL OF RECORD:

     For Appellant:

          Jim Wheelis, Chief Appellate Defender, David Avery, Assistant Appellate
Defender, Helena, Montana

     For Appellee:

          Hon. Mike McGrath, Montana Attorney General, J. Stuart Segrest,
Assistant Attorney General, Helena, Montana

          Robert M. McCarthy, Silver Bow County Attorney, Butte, Montana

Submitted on Briefs:  January 9, 2008

Decided:   January 29, 2008

Filed:

_____
Clerk

Justice Patricia O. Cotter delivered the Opinion of the Court.

¶1    Pursuant to Section 1, Paragraph 3(d)(v), Montana Supreme Court 1996 Internal Operating Rules, as amended in 2003, the following memorandum decision shall not be cited as precedent. Its case title, Supreme Court cause number and disposition shall be included in this Court's quarterly list of noncitable cases published in the Pacific Reporter and Montana Reports.

¶2    Appellant P.L., the birth mother of M.L. and A.T., appeals two orders of the Second Judicial District, Silver Bow County. One of these orders terminated her parental rights in M.L., the other terminated her parental rights in A.T. A consolidated appeal was first filed with this Court on August 30, 2007. By order dated October 31, 2007, we remanded this cause to the District Court to enter more specific and detailed findings of fact in support of its decisions to terminate P.L.'s parental rights. The District Court has now issued findings which contain the requisite specificity. Because the District Court did not abuse its discretion in terminating P.L.'s parental rights, we affirm.

¶3    M.L., an eleven year-old boy, and A.T., a ten year-old girl, were originally removed from P.L.'s care by the Department of Public Health and Human Services (DPHHS) of the State of Montana in 2003 after it was learned that their older sibling, V.A., had sexually abused them. V.A. was subsequently adjudicated a delinquent youth, convicted of two counts of felony incest and sent to Pine Hills Youth Correctional Facility. M.L. and A.T. were eventually placed in the care of their biological father (J.T.) instead of being returned to P.L.'s care, in part because P.L. was unable to make progress on a treatment plan, was not accessing counseling services, and refused to accept V.A.'s

2

guilt. In April 2005 J.T. renounced his intention of caring for M.L. and A.T., and returned them to the care of P.L.[1]  Of her own accord, P.L. contacted DPHHS during this time to avail herself of social services.  By this time, P.L. had accepted V.A.'s guilt and was willing to work with DPHHS social workers to keep the children in her care.

¶4     In October 2005 DPHHS received a report that M.L. and A.T. had suffered physical abuse, and that M.L. and A.T. had been sleeping on a couch together.  DPHHS was particularly concerned about M.L. and A.T. sleeping on the same couch, because a DPHHS social worker was aware that there was sexual acting out between the children as a result of their former sexual abuse.  These reports were investigated and it was determined that no abuse had occurred.  However, DPHHS advised P.L. that M.L. and A.T. were not to sleep in the same room unless an adult was present.  DPHHS continued to monitor this situation through meetings, therapy, and other support from DPHHS social workers and staff.

¶5     In January of 2006, P.L. began dating S.L., a registered sex-offender who had been convicted of a sexual offense in Minnesota in 1988.  Soon thereafter, S.L. moved in with P.L. at her residence at Silver Bow Homes in Butte.  On January 18, 2006, DPHHS received a report that P.L. had a new boyfriend who had recently been released from the Pre-Release Center in Butte.  This new boyfriend was, in fact, S.L.  DPHHS also learned that on January 17, 2006, P.L. had left A.T. in S.L.'s care when A.T. was sick and could not go to school.  Because DPHHS had been involved with P.L. concerning parenting issues as far back as 1997, and because DPHHS knew that P.L. had a history of repeated

_____

[1] J.T.'s parental rights were later terminated by order of the District Court.

poor judgment in her choice of significant others—some of which had been abusive to her— DPHHS asked P.L. to come to their offices in Butte and provide information concerning S.L.'s current status and criminal record. P.L. arrived at the DPHHS' offices in Butte with S.L. DPHHS officials attempted to question P.L. about the incident, S.L.'s sex offender status, and the relationship between P.L. and S.L. During this interview, S.L. became belligerent, refused to answer questions, and was asked to leave the DPHHS' offices. In fact, S.L. denied he was P.L.'s boyfriend or that he had recently been released from the Pre-Release Center, and refused to allow P.L. to answer questions. When asked to leave, S.L. demanded that P.L. leave with him, which she did. As a result, P.L. left with S.L. and never provided the information requested by DPHHS.[2]

¶6     After this incident and after it had been confirmed that A.T. was left alone with S.L., DPHHS removed A.T. and M.L. and placed them in foster care. On February 14, 2006, M.L. and A.T. were both adjudicated as youths in need of care within the meaning of § 41-3-102(34), MCA. On February 17 and June 15, 2006, appropriate treatments plans were approved and ordered by the District Court. These plans were identical and contained a number of tasks which P.L was ordered to successfully complete. Task One required P.L. to maintain a clean and safe place of residence and ensure it was drug and alcohol-free. Task Two stated that if P.L. maintains a relationship with S.L., S.L. will: (1) provide his birth date and social security number; (2) provide charging and sentencing documents; (3) provide proof that he has successfully completed sex offender treatment;

---

[2] As it turns out, S.L. had a prior criminal history. The record in this case reflects that in addition to the criminal sexual conduct conviction, S.L. had previously been found guilty of burglary and DWI.

and (4) obtain a sex offender evaluation and either enter treatment or provide written verification from a qualified sexual offender counselor that he is not at risk to re-offend. Task Three required anyone living with P.L. to complete a treatment plan. Task Four was a corollary of Task One and required P.L. to allow a DPHHS social worker to enter her home for scheduled and unscheduled visits in order to assess the appropriateness of the home and discuss changes which need to be made. The remaining tasks required P.L. to undergo psychological evaluations, meet with DPHHS social workers, and have weekly supervised contact with her children.

¶7 P.L. continued to maintain a relationship with S.L. S.L. was subsequently arrested and incarcerated on drug charges. P.L. later married S.L. in July 2006, while he was incarcerated.

¶8 After DPHHS determined that P.L. had not completed three of the six tasks, it petitioned the District Court for a termination of P.L.'s parental rights. DPHHS asserted that P.L. failed to complete Task One because she had been evicted from her apartment at Silver Bow Homes in Butte and was living at a homeless shelter called Homeward Bound. Similarly, because P.L. lived at a homeless shelter, DPHHS claimed it was not able to conduct home visits, and thus P.L. had not completed Task Four. Finally, DPHHS maintained that P.L. failed to comply with Task Two because she did not provide documentation regarding S.L.'s sex offender charge, nor proof of his enrollment in or completion of a sexual offender program. DPHHS maintained that Task Three was inapplicable because S.L. had been incarcerated on drug charges and was not living with P.L. so no treatment plan could be developed. P.L. did, however, complete the remaining

5

tasks including having weekly supervised visits with her children, undergoing psychological evaluations, and meeting with DPHHS social workers.

¶9 The District Court held a hearing on this matter on April 11, 2007. The District Court heard testimony from social workers, clinical psychologists, various service providers, and P.L. herself, and ultimately granted DPHHS' petition to terminate P.L.'s parental rights. The District Court found that Task One had not been completed because P.L. had been evicted from her apartment after it was discovered she was living with a registered sex offender (S.L), and was living at Homeward Bound. Thus, P.L. failed to maintain a clean, safe and drug-free residence because "Homeward Bound cannot be considered a long term residential placement for herself or her children." Similarly, the District Court concluded that she did not complete Task Four because she was living at Homeward Bound, and had lost her housing when she began living with S.L. With respect to Task Two, the District Court found that P.L. had failed to provide either the appropriate charging and sentencing documents from S.L.'s Minnesota conviction for a sexual offense, or documentation that S.L. had received sex offender treatment.

¶10 Additionally, the District Court determined that the condition rendering P.L. unfit to be a parent was unlikely to change within a reasonable time. In particular, the District Court observed that two psychologists evaluated P.L. and determined that she would be unable to meet the needs of her children and assume the role of a parent within a reasonable time. As a result, the District Court determined that P.L.'s parental rights should be terminated.

¶11 On appeal, P.L. argues that the District Court abused its discretion in terminating her parental rights. With respect to Task One, P.L. maintains that the District Court's finding was clearly erroneous because P.L. did not lose her apartment due to S.L. residing with her, but simply for failure to pay rent after her children were removed from her care by DPHHS. Further, P.L. notes that her treatment plan did not require her to maintain a long-term residential placement, but only one that is safe, clean and drug-free. P.L. points out officials from DPHHS conceded at the hearing that Homeward Bound was safe, clean, and drug-free. Thus, P.L. argues it was clear error by the District Court to conclude that P.L. did not satisfy this requirement. Additionally, P.L. asserts that the District Court's finding respecting Task Four is the "most clearly erroneous" because the DPHHS social worker testified that she herself declined to visit P.L. despite the fact that Homeward Bound was clean, safe and drug-free, and despite the fact that DPHHS works with other parents who reside there.

¶12 Lastly, P.L. maintains the District Court erred in finding that she failed to complete Task Two, arguing this task was simply inapplicable, and thus she could not have failed it. On the one hand, P.L. argues that if DPHHS concedes S.L. was not required to complete a treatment plan under Task Three because he was incarcerated and not living with P.L., it was clear error to find that she failed Task Two since "both tasks were premised on S.L.'s presence in P.L.'s residence, which was not the case." On the other hand, P.L. maintains that she provided DPHHS with as much information as DPHHS itself was able to document, even with its greater resources. Thus, P.L. argues the District Court's finding that she failed to complete three of the six tasks was clearly

7

erroneous, thereby leading it to incorrectly conclude her parental rights should be terminated.

¶13 A court may order the termination of parental rights if a child as been adjudicated a youth in need of care, an appropriate court-approved treatment plan has been established, the parent has not complied with the treatment plan, and the conduct or condition rendering the parent unfit is not likely to change within a reasonable time. Sections 41-3-609(1)(f)(i) and (ii), MCA. The court considers a non-exclusive list of factors in making the determination to terminate parental rights, focusing primarily on the physical, mental and emotional conditions and needs of the child. Sections 41-3-609(2) and (3), MCA. In Montana, the law presumes the bests interests of the child are served by termination of parental rights when a child has been in foster care for fifteen of the most recent twenty-two months. Section 41-3-604(1), MCA.

¶14 We review a decision to terminate parental rights for an abuse of discretion. *In the Matter of J.V.*, 2003 MT 68, ¶ 7, 314 Mont. 487, ¶ 7, 67 P.3d 242, ¶ 7. "The test for abuse of discretion is whether the trial court acted arbitrarily, without employment of conscientious judgment, or exceeded the bounds of reason resulting in substantial injustice." *In the Matter of C.J.K.*, 2005 MT 67, ¶ 13, 326 Mont. 289, ¶ 13, 109 P.3d 232, ¶ 13 (quotation omitted). Findings of fact are reviewed under the clearly erroneous standard, while conclusions of law are reviewed to determine if they are correct. *In the Matter of C.J.K.*, ¶ 13. "A court's findings of fact are clearly erroneous if they are not supported by substantial credible evidence, the court has misapprehended the effect of the evidence, or our review of the record convinces us that a mistake has been committed."

8

*State v. Vaughn*, 2007 MT 164, ¶ 15, 338 Mont. 97, ¶ 15, 164 P.3d 873, ¶ 15 (quotation omitted).

¶15    After careful review of the record in this case, we conclude the District Court did not abuse its discretion in terminating P.L.'s parental rights. As we have stated previously "it is a long-standing principle that complete compliance with a treatment plan is required, as opposed to partial compliance or even substantial compliance." *In the Matter of D.V.*, 2003 MT 160, ¶ 27, 316 Mont. 282, ¶ 27, 70 P.3d 1253, ¶ 27. Although we agree with P.L. that Task One did not require her to maintain a "long-term" residence, it did require *her*, and not a third-party or an agency, to maintain a clean and safe place of residence and ensure it was drug and alcohol-free. Although it appears from the record that she may have been able to have her children with her at Homeward Bound, the fact remains that she herself was not maintaining such a residence, because the rent and other conditions of Homeward Bound were provided by the agency administering the shelter. As DPHHS points out, the purpose of this task was to demonstrate that P.L. herself could provide for her children. At the time of the hearing P.L. had been living at Homeward Bound for over one year and indicated that she had just started to save money to get her own place. Because Homeward Bound only allows individuals to reside there for a two-year period, P.L. had less than one year to remain there. In light of these facts, we conclude the District Court did not err in finding that P.L. did not complete Task One.

¶16    Similarly, Task Two, as contained in the District Court docket, states that if P.L. *maintains a relationship* with S.L., S.L. will: (1) provide his birth date and social security number; (2) provide charging and sentencing documents; (3) provide proof that he has

9

successfully completed sex offender treatment; and (4) obtain a sex offender evaluation and either enter treatment or provide written verification from a qualified sexual offender counselor that he is not at risk to re-offend. The date for completing this task was July 1, 2006. At the time of the termination hearing P.L. and S.L. were still married. The fact that S.L. was not living in the home with P.L. does not change the clear requirements of the treatment plan. Moreover, in the affidavit in support of termination of parental rights filed by the DPHHS social worker, it was explained that although S.L. was not currently residing with P.L. "it is likely that he will in the future as they are married." In order to protect A.T. and M.L. from undergoing any further sexual abuse, DPHHS simply wanted to know the exact nature of S.L.'s offense and be sure that he would not re-offend. Given the fact that P.L. continued to remain married to S.L., the assumption that he would be living with P.L. is reasonable, if not a certainty. There is no reason why P.L. should be excused from this requirement so long as she remained married to S.L. In fact, at the termination hearing, P.L. admitted that she married S.L. in spite of the fact that his presence was the primary factor in her losing custody of her children in the first place. In any event, the treatment plan itself states that the required documentation concerning S.L. will be provided so long as they are in a relationship, and under these circumstances it is P.L.'s responsibility to ensure this task is fully completed. Thus, the District Court did not err in finding P.L. did not complete Task Two.

¶17 With respect to Task Four, we agree with DPHHS that a prerequisite to conducting home visits required P.L., and not a third-party or agency, to maintain a clean, safe, drug-free home. However, if it is true that DPHHS works with other families at Homeward

10

Bound, then it might be possible for P.L. to complete this task. Moreover, as P.L. points out, it was DPHHS who declined to conduct the visits. If the completion of this task was dispositive in reaching our conclusion to affirm the District Court's decision, we might be inclined to give this matter further consideration. But since we hold the District Court's findings with respect to Tasks One and Two were not clearly erroneous, its conclusion to terminate P.L.'s parental rights was not an abuse of discretion.

¶18 In this regard, we note that the psychological evaluations of P.L. before the District Court characterized her as "a person who is severely and chronically handicapped in parenting performance[,]" and further noted that P.L. had made little progress on critical areas related to parenting over a number of years. These reports also indicated that P.L. had a borderline level of intellectual functioning, 7th grade reading skills, poor coping and parenting abilities, and had demonstrated she was not able to meet the clear requirements of her treatment plans. P.L. has not challenged the validity of these evaluations.

¶19 Accordingly, we conclude the District Court did not abuse its discretion in terminating P.L.'s parental rights, especially in light of the presumption that it is in A.T. and M.L.'s best interests to terminate P.L.'s parental rights under § 41-3-604(1), MCA, given the fact that they have been in foster care for more than fifteen of the last twenty-two months.

¶20 Affirmed.

/S/ PATRICIA COTTER

11

We Concur:

/S/ JAMES C. NELSON
/S/ JOHN WARNER
/S/ JIM RICE
/S/ W. WILLIAM LEAPHART